STATE ex rel. Andrew LYONS, Petitioner,

v.

George LOMBARDI and Chris Koster,[1] Respondents.

No. SC 88625.

Supreme Court of Missouri, En Banc.

Jan. 26, 2010.

---

1. Since this case was filed, a new director of corrections and a new attorney general have taken office. Their names are substituted as provided in Rule 52.13(d).

Frederick A. Duchardt, Jr., Trimble, for petitioner.

Chris Koster, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for respondents.

## PER CURIAM.

### Overview

Andrew Lyons was convicted of first degree murder and sentenced to death for the killing of his estranged girlfriend. The sentence was affirmed by this Court. *State v. Lyons*, 951 S.W.2d 584 (Mo. banc 1997).[2] Claiming he is mentally retarded,

Lyons files this petition in mandamus as provided in *In re Competency of Parkus*, 219 S.W.3d 250, 254 (Mo. banc 2007). The Court appointed a master, who reports that the evidence supports Lyons' claim.[3] This Court finds that the master's findings and conclusions are supported by substantial evidence.

■ The Supreme Court of the United States has determined that the United States Constitution prohibits the execution of a mentally retarded person such as Lyons. *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). A permanent writ of mandamus will issue to prohibit Lyons' execution. In addition, the Court will recall its last mandate in *Lyons*, set aside Lyons' sentence of death as to his estranged girlfriend, and resentence Lyons for that offense to life imprisonment without eligibility for probation, parole, or release except by act of the governor. *See Parkus* at 254.

### Standard of review

■ The habeas corpus petitioner has the burden of proof to show that he is entitled to habeas corpus relief. *State ex rel. Nixon v. Jaynes*, 73 S.W.3d 623, 624 (Mo. banc 2002). Where the master has the opportunity to view and judge the credibility of witnesses, the findings and conclusions of the master are accorded the weight and deference given to trial courts in court-tried cases. *State ex rel. Winfield v. Roper*, 292 S.W.3d 909, 910 (Mo. banc 2009). In such cases, the master's findings and conclusions will be sustained by this

---

**2.** Lyons originally was convicted of two counts of murder and sentenced to death on each count. This Court affirmed both death sentences. *State v. Lyons*, 951 S.W.2d 584 (Mo. banc 1997). In August 2007, as required by *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), this Court set aside the death sentence for one of the murders because the jury failed to set out

findings necessary to impose the death penalty. *See State v. Whitfield*, 107 S.W.3d 253 (Mo. banc 2003).

**3.** The Court expresses its appreciation to the Honorable Michael D. Burton, Judge, 21st Judicial Circuit, for his service as master in this case.

Court unless there is no substantial evidence to support them, they are against the weight of the evidence, or they erroneously declare or apply the law. This Court should exercise the power to set aside the findings and conclusions on the ground that they are against the weight of the evidence with caution and with a firm belief that the conclusions are wrong. *See Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### Facts

Lyons seeks to prove that he is mentally retarded. The master received testimony from four of his witnesses and a witness presented by the state. In addition, the master received numerous exhibits, including, in part, on Lyons' behalf, reports of other experts, limited school records, and other materials from Lyons' relatives describing his experiences growing up. The state presented other exhibits.

Having received all the evidence, the master concluded that Lyons had met the definition of "mental retardation" contained in section 565.030.6, RSMo Supp. 2008. He concluded Lyons' IQ was in a range of 61 to 70; that Lyons' had continual extensive related deficits in two adaptive behaviors—communications and functional academics; and that these conditions were manifested and documented before Lyons was 18 years of age.

### Discussion

Section 565.030.6 provides:

As used in [section 565.030], the terms "mental retardation" or "mentally retarded" refer to a condition involving substantial limitations in general functioning characterized by significantly subaverage intellectual functioning with continual extensive related deficits and limitations in two or more adaptive behaviors such as communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure and work, which conditions are manifested and documented before eighteen years of age.

The master carefully considered each element of the definition.

*Significantly Subaverage Intellectual Functioning*

■ First, he sought to determine whether Lyons had significantly subaverage intellectual functioning. Although the statute does not specify any particular method for proving this element, the parties presented evidence of Lyons' IQ scores.[4] There were four IQ tests. The results ranged from 61 to 84.

Lyons' expert presented evidence that reconciled the variance. The master concluded that this expert's testimony was the most credible and concluded that Lyons' IQ fell within the range of 61 to 70.[5] There is substantial evidence to support the master's conclusion and finding of significantly subaverage intellectual functioning.

*Adaptive Behaviors*

Next, the master reviewed the evidence as to Lyons' adaptive behaviors. He found evidence to support the behaviors of communication and functional academics.

■ With respect to communication, the master noted the evidence of the difficulty Lyons' attorneys and some of Lyons' ex-

---

**4.** *See Diagnostic and Statistical Manual of Mental Disorders,* Fourth edition, p. 39 ("significantly subaverage intellectual functioning" for purposes of mental retardation is an IQ of "about 70 or below").

**5.** The state contends that the master discounted the higher scores, in part, because of the "Flynn effect," but the master specifically states his determination does not include the "Flynn effect." See the master's report at p. 8.

perts had communicating with him.[6] The family testimony also characterized Lyons as a loner, someone who kept to himself, was quiet, withdrawn, and unwilling to engage in conversations except to smile, and who became nauseated by having to get ready for school. The evidence also noted Lyons' inability to read, write, or spell.

■ With respect to functional academics, the master noted the limited school records. They indicated only failing or incomplete grades and that Lyons was in the 10th grade for three consecutive years. His Iowa Basic Skills Test placed Lyons in the bottom two percent. The family evidence indicated Lyons was in special education classes and was "slow" in reading and mathematics.

The foregoing evidence supports the master's conclusion and finding of continual extensive related deficits and limitations in two or more adaptive behaviors related to his significantly subaverage intellectual functioning.[7]

*Conditions Being Manifested And Documented Before Age 18*

■ Finally, the master concluded that these conditions were manifested and documented before 18 years of age. Although there is evidence, as noted earlier, that Lyons manifested these conditions before age 18, the state contends there was insufficient documentation of these conditions. The state vigorously notes the lack of an IQ test result from prior to age 18 and the scant school records and other evidence with respect to the adaptive behaviors.

Documentation, as with any other fact, is a matter of proof. In reaching his conclusion, the master was entitled to make reasonable inferences from the evidence. A purpose of requiring documentation is to diminish the possibility a defendant will fabricate or exaggerate the symptoms of mental retardation to avoid punishment. The records that Lyons presented and the testimony received are sufficient for the master to conclude that Lyons' conditions were not a recent fabrication and that they were documented prior to Lyons attaining 18 years of age.

**Conclusion**

This Court issues its permanent writ of mandamus to prohibit Lyons' execution. In addition, the Court will recall its last mandate in *Lyons*, set aside Lyons' sentence of death as to his estranged girlfriend, and resentence Lyons for that offense to life imprisonment without eligibility for probation, parole, or release except by act of the governor.

All concur.

---

6. Lyons' trial was delayed for more than two years because of a finding he was not competent to stand trial.

7. The master also noted significant deficits in the behaviors of home living, social skills, and leisure but found they were not sufficient to meet the statute's requirements.