

# SUPREME COURT OF MISSOURI
## en banc

State ex rel. Richard Strong )
)
           Petitioner, )
)
v. ) No. SC95043
)
Cindy Griffith, Warden, )
Potosi Correctional Center )
)
           Respondent. )

## ORIGINAL PROCEEDING IN HABEAS CORPUS

On April 23, 2015, this Court issued a warrant for the execution of Richard Strong on June 9, 2015. On June 4, 2015, Mr. Strong filed a petition for a writ of habeas corpus, claiming his execution would violate the Eighth and Fourteenth Amendments of the United States Constitution and article I, section 21 of the Missouri Constitution because his severe mental illness at the time of his crimes makes him unfit to be executed. He asks this Court to prohibit the state from executing him. In his petition, Mr. Strong fails to allege facts that would prove entitlement to a writ of habeas corpus because he could have raised his claim at trial, on appeal, or during post-conviction relief proceedings. Missouri provides statutory safeguards at both the guilt and penalty phase of trial to ensure that those with severe mental illness are not sentenced to the death penalty. *See*

sections 552.020, 552.030, 565.032.3(2), (6).[1]  Habeas review of a conviction is not appropriate where a defendant could have raised claims at trial, on direct appeal, or during post-conviction relief proceedings according to the state's procedural rules but did not do so for reasons internal to the defense. *State ex rel. Woodworth v. Denney*, 396 S.W.3d 330, 337 (Mo. banc 2013).  Moreover, habeas review does not provide "duplicative and unending challenges to the finality of a judgment," so it is not appropriate to review claims already raised on direct appeal or during post-conviction proceedings. *Id.*  Because Mr. Strong failed to raise relevant mental illness claims at trial due to a lack of evidence or a defense strategy and already raised a claim of his trial counsel's ineffectiveness for not presenting mitigating factors related to his mental condition during the penalty phase of his trial,  Mr. Strong cannot overcome the procedural bar for not timely raising his current claim.  Accordingly, Mr. Strong does not raise a legally cognizable claim for habeas relief related to his claim that he was mentally ill at the time of the murders.

Moreover, pursuant to the ban in the Eighth Amendment in the United States Constitution on cruel and unusual punishment, a prisoner may not be executed whose current mental illness "'prevents him from comprehending the reasons for the penalty or its implications'" or "those who are [currently] unaware of the punishment they are about to suffer and why they are to suffer it." *Panetti v. Quarterman*, 551 U.S. 930, 957, (2007) (internal quotations and citation omitted); s*ee also Ford v. Wainwright*, 477 U.S.

---

[1] All statutory references are to RSMo 2000, unless otherwise indicated.  Sections 552.020 and 552.030 were amended in 2011 but no relevant substantive changes were made.

2

399, 417, 422 (1986). Mr. Strong, however, does not claim that his current mental condition makes him incompetent to be executed and, without a substantial threshold showing otherwise, he is presumed competent because he was competent to stand trial. Mr. Strong does not make such a substantial threshold showing so he does not raise a cognizable competency claim. Accordingly, having failed to raise any legally cognizable habeas corpus claim, this Court denies his habeas petition.

## Factual and Procedural Background

In 2003, a jury convicted Richard Strong of two counts of first degree murder for killing his girlfriend and her two-year-old daughter. Mr. Strong was sentenced to death for the murders. This Court affirmed his convictions and death sentence on direct appeal in 2004. *State v. Strong*, 142 S.W.3d 702 (Mo. banc 2004) (*Strong I*). In 2008, Mr. Strong's motion for post-conviction relief was overruled, and this Court affirmed that decision. *Strong v. State*, 263 S.W.3d 636 (Mo. banc 2008) (*Strong II*). The United States District Court for the Eastern District of Missouri denied Mr. Strong's federal petition for a writ of habeas corpus, and the United States Court of Appeals for the Eighth Circuit affirmed that decision. *Strong v. Roper*, 737 F.3d 506 (8th Cir. 2013) (*Strong III*).

### A. Mr. Strong's Crimes[2]

On October 23, 2000, police officers were dispatched to the home of Mr. Strong's girlfriend, Eva Washington, following a disconnected 911 call. The officers knocked on both the front and back doors, but no one responded. Mr. Strong eventually came to the

---

[2] The recital of Mr. Strong's crimes is taken from the opinion of the Eighth Circuit without further attribution. *Strong III,* 737 F.3d at 509-10.

back door, where the officers asked about his wife and children. Mr. Strong responded that Ms. Washington and the children were asleep. He then stepped outside and closed the door behind him. When asked again about Ms. Washington and the children, Mr. Strong replied that Ms. Washington was at work and the children were inside the apartment. The officers asked to check on the children, but Mr. Strong informed them that he had locked himself out. Mr. Strong then knocked on the door, calling for someone to open it. The officers noticed that Mr. Strong was sweating profusely, had dark stains on the knees of his jeans, and had blood on his hands. When no one answered, the officers kicked in the door. Mr. Strong ran away. After he was apprehended, Mr. Strong told the officers, "[Y]ou should have shot me, they're both dead, I killed them."

Inside the apartment, the officers found the bodies of Ms. Washington and her two-year-old daughter, Zandrea Thomas. The bodies were located on the floor in the back bedroom, where the police also discovered a butcher knife. Ms. Washington and Mr. Strong's three-month-old child was in the room as well but was unharmed. An autopsy revealed that Ms. Washington had been stabbed twenty-one times and had five slash wounds. Zandrea had been stabbed nine times and had twelve slash wounds. Both Ms. Washington and Zandrea were disemboweled, and Mr. Strong had attempted to decapitate Zandrea.

A jury convicted Mr. Strong of two counts of first degree murder. Mr. Strong was sentenced to death for the murders on the recommendation of the jury. The jury found the state had proven two statutory aggravators beyond a reasonable doubt. *Strong II*, 142

4

S.W.3d at 710 n.3; *see* section 565.032.1. Pursuant to section 565.032.2, the jury found Mr. Strong had committed each murder while "engaged in the commission or attempted commission of another unlawful homicide" and that the murders were "outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind[.]" *Id.* The jury found that these aggravators were not outweighed by mitigating circumstances, and, therefore, justified a sentence of death. *See* section 565.032.1.

### B. Mr. Strong's Trial

Prior to his trial, Mr. Strong's counsel requested an evaluation of Mr. Strong's competency to stand trial under sections 522.020 and 522.030. The trial court appointed Dr. John Rabun who "attempted to evaluate Strong on two separate occasions, but Strong declined to be interviewed." *Strong III*, 737 F.3d at 515. The court then ordered Mr. Strong admitted to the Fulton State Hospital for observation. *Id.* After two weeks of observation, Dr. Rabun concluded that Mr. Strong "had the capacity to know and appreciate the nature, quality, and wrongfulness of his conduct," "had the capacity to form the intent as charged," and did not have "any signs or symptoms to suggest [he] was mentally ill." *Id.* at 515-16. Mr. Strong's counsel discussed this report with Mr. Strong and his family but did not retain an independent doctor or mitigation specialist to further evaluate and investigate Mr. Strong's mental condition and did not raise the issue of his mental health during the guilt or sentencing phase of Mr. Strong's trial. *Id.* at 516, 519-20.

5

## C. Mr. Strong's Post-Conviction Proceedings

In his post-conviction proceedings, Mr. Strong asserted that his trial counsel was ineffective for not adequately investigating and presenting all available mitigating factors during the penalty phase of his trial. Mr. Strong contended that trial counsel failed to adequately question two family members about his prior mental condition. *Strong II*, 263 S.W.3d at 652-53. Mr. Strong also contended that trial counsel was ineffective for not seeking an independent mental health examination for Mr. Strong and should have called experts such as Dr. Wanda Draper and Dr. Marilyn Hutchinson to prove that the murders were caused by his severe mental illness. *Id.* at 653. Notably, Mr. Strong did not contend that trial counsel was ineffective for failing to present a defense during the guilt phase of his trial that Mr. Strong was not criminally liable by reason of a mental disease or defect under section 552.030.

In denying his claims of ineffective assistance of counsel, the motion court found trial counsel conducted a reasonable investigation of Mr. Strong's family members. *Id.* Regarding his claim that trial counsel should have presented expert testimony of his mental condition, "the motion court found the testimony of Dr. Draper and Dr. Hutchinson to be that of 'paid experts with a biased opinion,' that their opinions were 'limited' and based on 'one-sided information,' and that 'neither expert would have benefited or been helpful' to Mr. Strong." *Strong II*, 263 S.W.3d at 653 n.11. The motion court ultimately found that trial counsel was not ineffective for not attempting to present such expert testimony. *Id.* at 653. Significantly, Mr. Strong's trial counsel had testified that counsel "believed that the best strategy was to show Mr. Strong was a good

man, able to do good things—not to blame Mr. Strong's actions on a bad childhood" that "could appear to a jury as making excuses, which might alienate or offend a jury." *Id.* The motion court found this trial strategy was valid. *Id.* On appeal, this Court affirmed the motion court's judgment, finding that Mr. Strong did not receive ineffective assistance of counsel. *Id.*

### D. Mr. Strong's Federal Habeas Proceedings

In his federal habeas petition, Mr. Strong again raised a claim of ineffective assistance of trial counsel based on counsel's failure to investigate and present expert testimony that he was severely mentally ill at the time of the crimes. *Strong III*, 737 F.3d at 519-20. Mr. Strong contended that trial counsel should have more thoroughly investigated his mental health because a notation in his jail records indicated a family history of schizophrenia. *Id.* The district court found trial counsel was not ineffective for failing to hire an independent doctor or mitigation specialist to further evaluate Mr. Strong or investigate his mental health issues. *Id.* On appeal, the Eighth Circuit held the district court did not err in rejecting Mr. Strong's ineffective assistance claim because Mr. Strong had previously denied having any personal or family history of mental illness and counsel's investigation of Mr. Strong's jail, work, and school records did not reveal any evidence that would suggest he was mentally ill. *Id.*

### Mr. Strong's Present Claim of Mental Illness at the Time of the Offense

Mr. Strong now claims he should not be executed because he was severely mentally ill at the time he committed his crimes. Mr. Strong does not claim he is not currently competent to be executed under relevant legal standards but, instead, asks this

7

Court to extend the reasoning in *Ford v. Wainwright*, 477 U.S. 399 (1986), *Atkins v. Virginia*, 536 U.S. 304 (2002)*,* and *Roper v. Simmons*, 543 U.S. 551 (2005), to prohibit the execution of those who were severely mentally ill at the time the offense was committed. Mr. Strong argues that such a prohibition reflects an "evolving standard of decency" under the Eighth Amendment.

Mr. Strong contends that a person with severe mental illness at the time of his or her crime is similar to a person who is insane, intellectually disabled, or who is a juvenile, insofar as none of the aforementioned groups possess the culpability the United States Supreme Court requires in order to impose the death penalty. *Atkins*, 536 U.S. at 319. Mr. Strong asserts that, like the aforementioned groups, a person with severe mental illness at the time of his or her offense is not "extremely culpable" because a person with severe mental illness has "diminished personal responsibility for [his or her] actions" and an "inability to make rational judgments or control his [or her] behavior."

Mr. Strong argues that the execution of those who have severe mental illness at the time of their crimes violates the Fourteenth Amendment because the United States Constitution prohibits the execution of other groups that have lessened culpability for their crimes yet allows the execution of those who were severely mentally ill at the time of their crimes. Additionally, Mr. Strong argues that imposing the death penalty on a person who had severe mental illness at the time of his or her crime violates the ban on cruel and unusual punishment under the Eighth Amendment of the United States Constitution and article I, section 21 of the Missouri Constitution because such an execution could not serve the social goals of retribution or deterrence. Mr. Strong also

8

asserts that those who are severely mentally ill "risk an unjust death sentence" because they are less able to assist counsel, may be poor witnesses, and may "create an unwarranted impression of lack of remorse for their crimes" by their demeanor.

Mr. Strong does not cite any court decision in any jurisdiction as authority for his claim. Instead, as support for this position, Mr. Strong offers statements from the American Bar Association, Mental Health America, the Missouri Death Penalty Assessment Team, and several academic articles that all recommended prohibiting the execution of those who had severe mental illness at the time of their crimes. Mr. Strong also provides an article discussing legislation recently proposed in the Ohio senate that would prohibit the execution of those who had severe mental illness at the time of their crimes and references several other states where such legislation also has been proposed but not enacted.

In support of his claim that he was severely mentally ill at the time of his crimes, Mr. Strong's writ petition describes anecdotal evidence of his mental health issues before, during, and immediately after he murdered Ms. Washington and her daughter. Mr. Strong initially provided no affidavits or other exhibits to support his claim that he was diagnosed with any mental illness of disorder. The state filed a response opposing Mr. Strong's writ petition and submitted five mental health examinations in support of its contention that Mr. Strong did not make a factual showing that he was severely mentally ill. These exhibits included Mr. Strong's January 2002 pre-trial competency evaluation and related reports from Dr. Rabun in January 2002 and 2003, a psychological examination completed on June 26, 2003, and Mr. Strong's most recent mental health

9

evaluation by the Department of Corrections on May 20, 2015. The reports all indicate that Mr. Strong has not exhibited signs or symptoms of severe mental illness and has not been diagnosed with severe mental illness. In response, Mr. Strong submitted a 2006 psychological report from Dr. Marilyn Hutchinson prepared in conjunction with Mr. Strong's post-conviction claim of ineffective assistance of counsel for failure to present expert testimony and mitigation evidence of his mental condition at the time of his crimes. Dr. Hutchinson diagnosed Mr. Strong with major depression, obsessive-compulsive disorder, post-traumatic stress disorder, schizotypal personality disorder, and dissociative identity disorder.

This Court, however, need not consider Mr. Strong's and the state's evidence because Mr. Strong fails to present a cognizable claim for habeas corpus relief. Missouri provides statutory safeguards at both the guilt and penalty phase of trial to ensure that those with severe mental illness are not sentenced to the death penalty. *See* sections 552.020, 552.030, 565.032.3(2), (6). Section 552.020.1 provides that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Mr. Strong did not assert that he was incompetent to stand trial. Under section 552.030.1, "A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct." Mr. Strong did not raise this defense

10

at trial and has not claimed that his trial counsel was ineffective for failing to raise this defense.

Additionally, during the penalty phase of trial, section 565.032.3 allows a defendant facing the death penalty to present evidence to the jury of mitigating circumstances that would justify a sentence of life without parole instead of a sentence of death. A defendant may present mitigating evidence that "[t]he murder in the first degree was committed while the defendant was under the influence of extreme mental or emotional disturbance" or that "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." Section 565.032.3(2), (6).

Due to either a lack of evidence or as trial strategy, Mr. Strong presented no mitigating evidence related to his mental condition. Habeas review of a conviction is not appropriate where a defendant could have raised claims at trial, on direct appeal, or during post-conviction relief according to the state's procedural rules but did not do so for reasons internal to the defense. *Woodworth*, 396 S.W.3d at 337. Mr. Strong does not overcome the procedural bar for not timely raising his current claims at trial.[3] Because

---

[3] Additionally, even if Mr. Strong's claim was not procedurally barred, he relies primarily on vague allegations, anecdotes about his unstable family life, and one psychological report completed nearly six years after Mr. Strong murdered Ms. Washington and her daughter. This report diagnosed Mr. Strong with major depression, obsessive-compulsive disorder, post-traumatic stress disorder and schizotypal personality disorder, and dissociative identity disorder. He presents no other affidavits or evidence of his mental condition at the time of the murders. In contrast, as discussed in Mr. Strong's pre-trial competency assessment report, police documented that immediately following the murder Mr. Strong tried to conceal the murders when confronted by police and then fled the scene, suggesting he knew the nature of his action and knew it was wrong. When

11

Mr. Strong failed to raise relevant mental illness claims at trial due to a lack of evidence or as a defense strategy, and already raised a claim of his trial counsel's ineffectiveness for not presenting mitigating factors related to his mental condition during the penalty phase of his trial, Mr. Strong cannot overcome the procedural bar for not timely raising his current claim. Accordingly, Mr. Strong does not raise a legally cognizable claim for habeas corpus relief related to this claim that he was mentally ill at the time of the murders.

While a petition for a writ of habeas corpus is the proper means for raising a claim that a prisoner is incompetent to be executed, Mr. Strong also does not claim that he is not mentally competent to be executed. *See State ex rel. v. Cole v. Griffith*, -- S.W.3d --, Slip. Op. at 5, 2015 WL 2084708 (No. SC94880) (Mo. banc 2015). The Eighth Amendment's ban on cruel and unusual punishment precludes the execution of a prisoner whose current mental illness "prevents him from comprehending the reasons for the penalty or its implications" or "those who are [currently] unaware of the punishment they are about to suffer and why they are to suffer it." *See also Panetti*, 551 U.S. at 957 (internal quotations and citations omitted); *Ford*, 477 U.S. at 422. In *Cole*, -- S.W.3d --, Slip. Op. at 5-6, this Court stated the applicable constitutional law related to the execution of a person who claims incompetency dues to mental illness. To determine

police caught him, he spontaneously told officers, "They are both dead! You might as well shoot me. They are dead!", again suggesting that he understood the consequences of what he had done. Both before and after being apprehended, Mr. Strong acted calm, suggesting that he was in control and not mentally incapacitated. Moreover, none of state's three medical reports found Mr. Strong to present signs or symptoms indicative of mental illness nor did Mr. Strong self-report mental illness to any of these doctors.

whether a prisoner may be executed, this Court must evaluate the prisoner's *present* mental condition. Moreover, "the state may presume that a prisoner who has been judged competent to stand trial remains sane at the time sentence is to be carried out" unless he can show "a substantial threshold showing of [current] insanity[.]" *Cole*, -- S.W.3d --, Slip. Op. at 6.

Mr. Strong does not claim that he is not currently competent to be executed. Accordingly, under current legal standards Mr. Strong may be executed. Mr. Strong's petition for a writ of habeas corpus requesting this Court to prohibit the state's execution of him because he was severely mentally ill at the time of his crimes does not state any legally cognizable claims for habeas relief.

## Conclusion

Mr. Strong does not state a legally cognizable claim for habeas corpus relief because he raises claims that could have been raised according to this state's procedures but were not for reasons internal to the defense. Moreover, he does not contend that he is currently mentally incompetent to be executed. Accordingly, because Mr. Strong has not presented any legally cognizable claims for habeas relief, this Court denies his petition for a writ of habeas corpus.

_____
PATRICIA BRECKENRIDGE, JUDGE

Russell, C.J., Fischer, Stith, Draper
and Wilson, JJ., concur; Teitelman, J.,
dissents in separate opinion filed.

13



# SUPREME COURT OF MISSOURI
## en banc

State ex rel. RICHARD STRONG, )
)
           Petitioner, )
)
v. )   No.  SC95043
)
CINDY GRIFFITH, Warden, )
Potosi Correctional Center, )
)
           Respondent. )

## DISSENTING OPINION

I respectfully dissent.  I would hold that the reasoning in *Ford v. Wainwright*, 477 U.S. 399 (1986), *Atkins v. Virginia*, 536 U.S. 304 (2002) and *Roper v. Simmons,* 543 U.S. 551 (2005) applies to individuals who, like Mr. Strong, were severely mentally ill at the time the offense was committed.  Therefore, I would grant habeas relief and appoint a special master to more fully address Mr. Strong's claims.

 

                                 _____
                                 RICHARD B. TEITELMAN, JUDGE