

# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. JOHNNY A. JOHNSON, )   *Opinion issued June 8, 2023*
            )
      Petitioner,     )
            )
v.              )    No. SC100077
            )
DAVID VANDERGRIFF,     )
            )
      Respondent.    )

## ORIGINAL PROCEEDING IN HABEAS CORPUS

On April 19, 2023, this Court issued a warrant for the execution of Johnny Johnson on August 1, 2023.[1]  On May 16, 2023, Johnson filed a petition for a writ of habeas corpus, claiming his execution would violate the Eighth and Fourteenth amendments of the United States Constitution because (1) he is incompetent to be executed under the standard set by the United States Supreme Court in *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Ford v. Wainwright*, 477 U.S. 399 (1986), and (2) he is severely mentally ill.  Johnson asks this Court to issue a writ prohibiting his execution and to appoint a special master to conduct an evidentiary hearing on his

---

[1] The factual background underlying Johnson's first-degree murder conviction can be found in this Court's opinion affirming his death sentence.  *State v. Johnson*, 207 S.W.3d 24, 31-34 (Mo. banc 2006).

incompetency claim. He also filed a motion for a stay of execution while his incompetency claim is adjudicated.

Johnson has not demonstrated the "substantial threshold showing of insanity" required by *Panetti* and *Ford*. Further, Johnson's mental illness claims are procedurally barred. Accordingly, this Court denies his habeas petition and overrules as moot his accompanying motion for a stay of execution.

**Standard of Review**

Habeas relief "is limited to cases of manifest injustice involving a claim of actual innocence or where the sentence is unlawful." *State ex rel. Nixon v. Sprick*, 59 S.W.3d 515, 519 (Mo. banc 2001). "[H]abeas review does not provide duplicative and unending challenges to the finality of a judgment, so it is not appropriate to review claims already raised on direct appeal or during post-conviction proceedings." *State ex rel. Strong v. Griffith*, 462 S.W.3d 732, 733-34 (Mo. banc 2015) (internal quotation omitted). Additionally, a writ of habeas corpus will be denied if one "raises procedurally barred claims that could have been raised at an earlier stage . . . ." *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 546 (Mo. banc 2003). This restriction can be overcome by showing a jurisdictional defect, cause and prejudice, or extraordinary circumstances where manifest injustice would occur without relief. *Id.* "A petition for a writ of habeas corpus is a proper means to raise a claim of incompetency." *State ex rel. Cole v. Griffith*, 460 S.W.3d 349, 356 (Mo. banc 2015). A habeas petitioner bears the burden of proof to show he or she is "entitled to habeas corpus relief." *State ex rel. Lyons v. Lombardi*, 303 S.W.3d 523, 526 (Mo. banc 2010).

2

## Analysis

Johnson argues that, because he is severely mentally ill, his execution violates the Eighth Amendment and the Equal Protection Clause under the Fourteenth Amendment. This Court has already heard and denied, on direct appeal, Johnson's claim that his execution violates the Eighth Amendment.[2] *Johnson*, 207 S.W.3d at 50-51. "[H]abeas review does not provide duplicative and unending challenges to the finality of a judgment, so it is not appropriate to review claims already raised on direct appeal or during post-conviction proceedings." *Strong*, 462 S.W.3d at 733-34 (internal quotation

---

[2] On direct appeal, this Court considered Johnson's following argument:

> He asserts that the evidence showed that his severe mental illness impaired his ability to reason and control his conduct in the same manner as an offender who suffers from mental retardation, such that he should not be sentenced to death under *Atkins v. Virginia,* 536 U.S. 304, 122 S. Ct. 2242, 153 L.Ed.2d 335 (2002) (execution of the mentally retarded criminal is "cruel and unusual punishment" prohibited by the Eighth Amendment). Johnson further argues that the mitigating evidence of his mental illness weighed against imposition of the death penalty.

*Johnson*, 207 S.W.3d at 50-51. In rejecting Johnson's argument, this Court explained:

> The jury rejected Johnson's mental illness defenses and arguments in both the guilt and penalty phases of the trial. Both federal and state courts have refused to extend *Atkins* to mental illness situations. *In re Neville,* 440 F.3d 220, 223 (5th Cir. 2006); *State v. Hancock,* 108 Ohio St. 3d 57, 840 N.E.2d 1032, 1059-60 (2006). There is nothing in the record of this case that would justify a different course of action.

*Id.* at 51.

3

omitted).[3] Even if this Court were to reach the merits of Johnson's claim, however, it fails. The United States Supreme Court held in *Atkins v. Virginia*, 536 U.S. 304 (2002), that the execution of an intellectually disabled criminal is "cruel and unusual punishment" prohibited by the Eighth Amendment. *Id.* at 321. Both federal and state courts, however, have refused to extend *Atkins* to mental illness. *See Johnson*, 207 S.W.3d at 51. Accordingly, Johnson's claim fails.

Johnson also argues he is mentally incompetent to be executed and, therefore, his execution would violate the Eighth Amendment. *Ford* and *Panetti* set forth the standard for an Eighth Amendment claim that a prisoner is not competent to be executed. "[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." *Ford*, 477 U.S. at 409-10; *see also Panetti*, 551 U.S. at 934. This constitutional protection "prohibits the execution of a prisoner whose mental illness prevents him from 'rational[ly] understanding' why the State seeks to impose that punishment." *Madison v. Alabama*, 139 S. Ct. 718, 722 (2019) (alteration in original) (citing *Panetti*, 551 U.S. at 959). *Panetti* does not require a hearing unless Johnson demonstrates a "substantial threshold showing of insanity." *Panetti*, 551 U.S. at 949; *Ford*, 477 U.S. at 426.

In support of his incompetency claim, Johnson presents evidence from Dr. Bhushan Agharkar, who was hired to conduct a psychiatric evaluation of Johnson.

---

[3] Likewise, Johnson's claim that, because he is mentally ill, his execution violates the Equal Protection Clause is procedurally barred because he could have raised this claim on direct appeal or in postconviction proceedings. *Roper*, 102 S.W.3d at 546.

Following a review of Johnson's records and a single clinical interview with Johnson on

February 24, 2023, Agharkar concluded:

> Mr. Johnson is aware he is on death row and that he was convicted of murder. However, he does not have a rational understanding of the link between his crime and his punishment. His understanding of the reason for his execution is irrational and delusional, because he believes it is Satan "using" the State of Missouri to execute him in order to bring about the end of the world and that the voice of Satan confirmed this plan to him. He believes he has been marked with the "Seventh Sign" and the world will be destroyed were he to die. His belief that he can change this plan by going into the judge and lawyers' heads to influence them to not execute him is likewise irrational and delusional, as is his belief that the spirits of the underworld can influence the State to not execute him for Satan's purposes. He endorsed delusional beliefs about his mortality, and while he conceded he "thinks" he would die by lethal injection, his statements that he is a vampire and able to "reanimate" his organs, and his belief he can enter an animal's mind if he can learn the right "code" in order to go on living after his execution show that he does not have a rational understanding of the finality of his punishment.[4]

While Agharkar opines that Johnson "does not have a rational understanding of the link

between his crime and punishment," his opinion also states: "[Johnson] is aware he has

been sentenced to death for the murder of a child and that the State plans to execute him

via lethal injection."  The State contends Agharkar's statement—that Johnson is aware he

has been sentenced to death for the murder of a child—evidences that Johnson has a

rational understanding of the reason for his execution.[5]  To the contrary, Johnson asserts

---

[4] As for Johnson's alleged delusions regarding whether the State can be influenced ("by going into the judges' and lawyers' heads") into not executing him or his mortality, this Court has held that merely because an inmate is delusional as to his/her chances of escaping execution does not make the inmate incompetent under *Ford* and *Panetti*.  *State ex rel. Middleton v. Russell*, 435 S.W.3d 83, 85 (Mo. banc 2014).  Accordingly, even assuming Johnson is delusional as to whether the State can be influenced into not executing him or as to his mortality, this does not make him incompetent to be executed.
[5] The State also cites *State ex rel. Clayton v. Griffith*, 457 S.W.3d 735 (Mo. banc 2015), in support of its argument that Johnson is competent to be executed.  In *Clayton*, the

that "awareness" of the reason for his penalty is not the same as a rational understanding of the reason for his penalty, citing *Panetti*. Instead, Johnson maintains he lacks a rational understanding of his punishment and genuinely believes the true purpose of his execution is to do Satan's bidding and bring about the end of the world. In *Panetti*, the United States Supreme Court noted:

> We likewise find no support elsewhere in *Ford,* including in its discussions of the common law and the state standards, for the proposition that a prisoner is automatically foreclosed from demonstrating incompetency once a court has found he can identify the stated reason for his execution. A prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it. *Ford* does not foreclose inquiry into the latter.

551 U.S. at 959. Accordingly, Johnson's awareness of the State's rationale for his execution should not end the inquiry as to whether he has a rational understanding of the reason for his penalty.

The State further challenges the credibility of Agharkar's opinion in arguing that Johnson's medical reports do not support the alleged delusions that Agharkar asserts. The State relies on Johnson's medical reports and the affidavit, dated May 24, 2023, of Ashley Skaggs, the institutional chief of mental health at Potosi Correctional Center, who

---

petitioner dealt with delusions that his conviction was the result of a conspiracy and that some outside force would intervene and save him, yet such was not enough to meet the substantial threshold showing under *Ford* and *Panetti* because Clayton understood the reason for his execution. *Id.* at 744-45. Likewise, the State argues here that Johnson's religious-themed delusions are not enough to meet the substantial threshold showing of incompetency. But *Clayton* is distinguishable from the instant case because Clayton's delusions related to the reason for his conviction and whether his execution would, in fact, occur—not *why* he was to be executed. *Id.* at 745. To the contrary, here, Johnson's expert opines that Johnson does not have a rational understanding as to *why* he is to be executed.

has met regularly with Johnson since 2021 to assess his mental health. In response to Agharkar's assessment, Skaggs states:

> During my visits with Mr. Johnson, he has never expressed these kinds of hallucinations or delusional beliefs. On the contrary, in recent months Mr. Johnson has reported that his auditory hallucinations are well managed by medication and has denied more severe symptoms or side effects. … During my visits with Mr. Johnson, he has made statements about his upcoming execution, his communications with his attorneys, and the status of his legal appeals. … From my observations, Mr. Johnson appears to understand the nature of his upcoming execution.

Agharkar's insistence that Johnson is suffering from hallucinations and delusional beliefs is refuted by Skaggs's affidavit and Johnson's recent medical records. For example, in discussing on September 9, 2020, his "death row status" with a mental health services provider, Johnson stated he "is very ashamed of killing his best friend's daughter." On May 10, 2023, in talking to a mental health services provider, Johnson stated "he's still working with his attorneys to fight his case as best as he can but he's at peace with whatever happens." Further, while Johnson is diagnosed with schizophrenia and has reported hearing voices before,[6] his most recent medical records indicate that his current medications are controlling his mental health symptoms—including reports from April and May of 2023 that he has been free of auditory hallucinations since taking medication.

Because Johnson's petition for a writ of habeas corpus is an original proceeding in this Court, this Court is the factfinder. Rule 84.22; Rule 91.01; *see also Cole*, 460 S.W.3d at 358. "In this role, this Court considers [Johnson's] argument and evidence in ruling on his writ petition." *Cole*, 460 S.W.3d at 358. Though Agharkar's report—which

---

[6] Johnson was diagnosed with schizophrenia at the age of 16.

was based on a single meeting with Johnson—alleges Johnson lacks a rational understanding of the reason for his execution, his report is contrary to the other evidence. Neither Skaggs's affidavit—which was based on her regular assessments of Johnson's mental health since 2021—nor Johnson's medical records support Agharkar's allegations of Johnson's delusions. Such conflicting evidence weakens the persuasiveness of Agharkar's report.[7] This Court finds Johnson's evidence lacks credibility, particularly when viewed in light of the State's evidence, to demonstrate a substantial threshold showing of insanity. *See Cole*, 460 S.W.3d at 358. Johnson's claim fails.

## Conclusion

Johnson has not demonstrated the substantial threshold showing of insanity required by *Panetti* and *Ford*. Additionally, Johnson's mental illness claims are

---

[7] This Court has previously considered the persuasiveness of inmates' doctor reports to be weakened when there is other conflicting evidence. For example, in rejecting the petitioner's claim in *Cole* that he was incompetent to be executed, this Court noted:

> Additionally, the persuasiveness of the attorneys' affidavits and Dr. Logan's report with respect to Mr. Cole's behavior is significantly weakened by the audio recordings from the telephone conversations. In their affidavits, the attorneys state that Mr. Cole appeared agitated, talked for long periods of time before suddenly stopping during a sentence, sometimes whispered or mouthed words, and jumped from topic to topic in a disorganized fashion. Dr. Logan also reported that Mr. Cole's thinking became disorganized during the examination. Mr. Cole does not exhibit any of these bizarre speech behaviors during the telephone conversations, however. Rather, Mr. Cole sounds calm and is able to follow the conversations without abruptly changing the conversation to an unrelated topic.

*Cole*, 460 S.W.3d at 360-61. Similarly, here, the persuasiveness of Agharkar's report is significantly weakened by Skaggs's report and Johnson's medical records, which do not include a single mention of the type of delusions that Agharkar alleges.

8

procedurally barred.  Johnson's petition for a writ of habeas corpus is denied, and his accompanying motion for a stay of execution is overruled as moot.[8]

_____
Mary R. Russell, Judge

Wilson, C.J., Powell, Breckenridge, Fischer and Ransom, JJ, concur; Draper, J., dissents without opinion.

---

[8] No Rule 84.17 motions for rehearing shall be filed in this matter.