# IN THE SUPREME COURT OF IOWA

No. 17–1997

Filed December 6, 2019

**DAVID PALMER DEWBERRY,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Decatur County, John D. Lloyd, Judge.

The appellant appeals from the summary dismissal of his application for postconviction relief. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

**McDONALD, Justice.**

Eight years ago David Dewberry stood in open court with his counsel and pleaded guilty to robbery in the first degree, in violation of Iowa Code section 711.2 (2011). In this postconviction-relief case, Dewberry now claims he is actually innocent of robbery in the first degree and seeks to vacate his conviction. "Dispositive to this case" is a "fundamental fact: [Dewberry] is not innocent, in any sense of the word." *Herrera v. Collins*, 506 U.S. 390, 419, 113 S. Ct. 853, 870 (1993) (O'Connor, J., concurring).

## I.

Dewberry's conviction arises out of a home invasion he perpetrated in July 2011. The facts and circumstances of the home invasion were set forth in a prior decision affirming the denial of Dewberry's first application for postconviction relief, and we need not repeat them at any great length herein. *See Dewberry v. State*, No. 14-1198, 2015 WL 7567514, at *1–2 (Iowa Ct. App. Nov. 25, 2015). In short, Dewberry burst through the front door of a single-family residence in the middle of the night. He wore a black ski mask and carried what looked like a black handgun. After Dewberry burst in, he grabbed one of the family members by the neck, threatened to shoot her, and demanded money. Rather than give in to Dewberry's demand, the family physically resisted Dewberry. During the ensuing physical altercation, Dewberry and two of the family members tumbled down a staircase. Dewberry then ran back up the staircase, put his gun in another's face, and screamed, "Give me your money." By that point, one of the family members had retrieved a 12-gauge shotgun. He pointed the shotgun at Dewberry's head, and Dewberry fled out the front door. When officers arrived at the scene, they found three duffel bags in a field near the home filled with tape, twine, and garbage bags.

Dewberry was caught shortly thereafter. The evidence against him was overwhelming. Dewberry was charged with one count of burglary in the first degree, three counts of robbery in the first degree, one count of assault while participating in a felony, and one count of going armed with intent. In total, Dewberry faced up to 110 years' incarceration. Pursuant to a plea agreement, Dewberry pleaded guilty to one count of robbery in the first degree and was sentenced to an indeterminate term of incarceration not to exceed twenty-five years. In exchange for Dewberry's guilty plea, the State agreed to dismiss the remaining charges.

The plea colloquy was thorough. The court asked Dewberry to explain what he did:

> THE DEFENDANT: Well, Your Honor, on the day of July 16, 2011, I was going to commit a theft, and in doing so, I entered a residence that was not mine nor had any permission to enter and used the BB gun to put fear or threaten the residents of the home.
>
> THE COURT: Can you describe for me further what this gun was that you used?
>
> THE DEFENDANT: It was just a BB gun.
>
> THE COURT: Was it a spring-loaded BB gun, or was it C02?
>
> THE DEFENDANT: It was just a spring-loaded, I think. It might have been C02. I don't know. I never shot it.
>
> THE COURT: Well, can you describe what it looked like?
>
> THE DEFENDANT: It was black.
>
> THE COURT: Can you describe it further as to the shape of it?
>
> THE DEFENDANT: It looked like a gun.
>
> THE COURT: Have you ever seen a real gun before?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Did it look like a real gun?

> THE DEFENDANT: Pretty close.
>
> THE COURT: Mr. Dewberry, one of the prongs, if you will, of a definition of a dangerous weapon is any instrument or device of any sort whatsoever which is actually used in such manner as to indicate that the defendant intends to inflict death or serious injury upon the other and which when so used is capable of inflicting death upon a human being. Did the gun that you described fit that definition?
>
> THE DEFENDANT: Yes, Your Honor.

The court also gave Dewberry the opportunity to dispute facts in the minutes of testimony.

> THE COURT: Now, Mr. Dewberry, along with the trial information that was filed in this case, there were what's called minutes of testimony, and the minutes of testimony are written statements that the county attorney expects those persons identified would testify to at the time of trial. Did you read those minutes of testimony?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did you go over those with [your counsel] in this case?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is there anything in those minutes of testimony that is not true?
>
> THE DEFENDANT: No, Your Honor.

Finally, the court asked Dewberry if he was pleading guilty for any reason other than he committed the offense:

> THE COURT: Mr. Dewberry, are you pleading guilty in this case for any reason other than the fact that you committed the crime that you're charged with?
>
> THE DEFENDANT: No, Your Honor.

The district court accepted Dewberry's guilty plea and entered judgment.

In 2013, Dewberry filed his first application for postconviction relief. Dewberry claimed his counsel provided constitutionally deficient representation in allowing Dewberry to plead guilty without a factual basis

for the plea. Specifically, Dewberry argued there was no factual basis to show the BB gun was a "dangerous weapon." Iowa Code § 711.2 ("A person commits robbery in the first degree when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon."). The district court denied the application, and the court of appeals affirmed. *See Dewberry*, 2015 WL 7567514, at *4 ("There was a sufficient factual basis in the record to show Dewberry committed robbery while armed with a dangerous weapon.").

This case arises out of Dewberry's second application for postconviction relief. In this application, at least as presented on appeal, Dewberry contended he was actually innocent of robbery in the first degree because the BB gun was not a dangerous weapon. On the State's motion, the district court summarily dismissed Dewberry's second application for postconviction relief without an evidentiary hearing. Dewberry timely appealed the decision, and the court of appeals reversed the decision of the district court. The court of appeals concluded the district court's summary dismissal of the application deprived Dewberry of the opportunity to prove up his claim of actual innocence. We granted the State's application for further review.

## II.

"We review summary dismissals of postconviction-relief applications for errors at law." *Schmidt v. State*, 909 N.W.2d 778, 784 (Iowa 2018). "[F]or a summary disposition to be proper, the State must be able to prevail as if it were filing a motion for summary judgment in a civil proceeding." *Id.* Applying summary judgment principles, summary disposition is proper

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3). To the extent Dewberry's claim of actual innocence raises constitutional questions, our review is de novo. *See Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018) ("We generally review postconviction proceedings, including summary dismissals of postconviction-relief applications, for errors at law. [However, w]hen the basis for relief implicates a violation of a constitutional dimension, our review is de novo." (citation omitted)).

### III.

It had long been the law of this state that

[w]hen a defendant voluntarily and intelligently enter[ed] a plea of guilty with actual knowledge of the existence of his constitutional rights, full understanding of their meaning and clear comprehension of direct consequences of their waiver, he acknowledge[d] guilt thereby supplying both evidence and verdict ending the controversy.

*State v. Kobrock*, 213 N.W.2d 481, 482–83 (Iowa 1973). Although a guilty plea and subsequent entry of judgment usually terminated a criminal proceeding, our caselaw did allow a defendant to challenge a plea based on grounds intrinsic to the plea—that is "the voluntary and intelligent character of the guilty plea." *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011), *overruled on other grounds by Schmidt*, 909 N.W.2d at 790. However, our caselaw foreclosed any challenge to a guilty plea based on grounds extrinsic to the plea. *See id.*

Last year, in *Schmidt*, this court "overrule[d its] cases that d[id] not allow defendants to attack their pleas based on extrinsic grounds when they claim[ed] actual innocence." 909 N.W.2d at 790. This court held "freestanding claims of actual innocence permitted by the Iowa Constitution are available to applicants even though they pled guilty." *Id.*

at 795. This court grounded the actual innocence exception in two provisions of the Iowa Constitution: (1) "Article I, section 9 of the Iowa Constitution[,] prohibit[ing] the deprivation of liberty without due process of law"; and (2) "Article I, section 17 of the Iowa Constitution[,] prohibit[ing] cruel and unusual punishment." *Id.* at 793–94.

While *Schmidt* recognized a postconviction-applicant's right to assert a claim of actual innocence, *Schmidt* also recognized a claim of actual innocence was limited. *See id.* at 793 ("Thus, there are limits on actual-innocence claims."). An applicant must first meet the procedural requirements governing the presentation of postconviction-relief claims as set forth in Iowa Code chapter 822. For example, the applicant must comply with the statute of limitations or prove a statutory exception thereto. *See id.* at 798–99 (discussing the statute of limitations under Code section 822.3). By way of another example, an applicant must also meet the procedural bar set forth in Code section 822.8 or prove a statutory exception thereto.

Upon satisfying the statutory requirements for the presentation of postconviction-relief claims, an applicant "must meet the demanding actual-innocence standard to prove the validity of [his or her] actual-innocence claims." *Id.* at 793. An applicant must show "by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant." *Id.* at 797. *Schmidt* adopted this demanding standard because "an applicant bringing a freestanding claim of actual innocence is claiming he or she is *factually and actually innocent*, despite a fair, constitutionally compliant trial or plea colloquy free of constitutional defects." *Id.* (emphasis added). The demanding standard also "balance[d] the interest of an innocent defendant and that of the state." *Id.* In particular, the demanding

standard balanced the liberty interest of a factually innocent person to be free from conviction and criminal sanction against the state's legitimate interests in finality and the conservation of judicial resources. *See id.* at 791, 797.

Here, Dewberry contends he is actually innocent of robbery in the first degree. Specifically, he contends the BB gun was not a dangerous weapon within the meaning of Code section 711.2. He also contends he was entitled to a postconviction trial to prove up his claim of actual innocence. While Dewberry contends he is actually innocent of robbery in the first degree, he concedes, as he must, he is guilty of robbery in some lesser degree.

We conclude the district court did not err in dismissing Dewberry's application for postconviction relief. First, it is questionable whether Dewberry even asserted a claim of actual innocence in the district court. In his application for postconviction relief, Dewberry did not claim he was actually innocent of robbery in the first degree. Instead, he claimed his plea counsel was ineffective in not obtaining an expert witness to examine the BB gun. This later morphed into a claim that Dewberry wanted an expert witness to examine the BB gun to, at best, create a fact issue on whether the BB gun was a dangerous weapon within the meaning of the statute. The following exchange during the hearing on the motion to dismiss is illustrative:

> Our position is that Mr. Dewberry is entitled to have someone at l[e]ast take an actual look at the weapon. The weapon was seized. There's been various descriptions of the weapon throughout. . . . The truth is I don't know whether it's an Airsoft weapon or not. I know that's what postconviction counsel described it as. I know law enforcement seized a weapon. . . . [A]t least we have photographs of that weapon and . . . we could have someone take a look at it and decide objectively and factually whether or not—as an objective fact whether or not that weapon is capable of inflicting death.

After the district court granted the State's motion to dismiss, Dewberry filed a motion to reconsider. In that motion, Dewberry explicitly identified his claim as a claim of actual innocence of robbery in the first degree. The district court denied the motion to reconsider, denying that claim on the merits. As this claim was first presented to the district court, it was not a claim of actual innocence. Instead, it was merely a contention that examination of the BB gun might have created a fact issue on whether the BB gun was a dangerous weapon. More pointedly, it was simply a belated request to go to trial.

Second, Dewberry's claim, as presented to the district court, was not a new issue. Whether there was a triable issue of fact regarding the weapon was specifically discussed during the plea colloquy:

> THE COURT: Do you know of any defense that Mr. Dewberry would have to this charge, other than a general denial?

> MR. GREENWOOD: No. . . . We discussed all of the affirmative defenses available to Mr. Dewberry, specifically including diminished responsibility, also the collateral defense of asserting that the gun used is not the equivalent of a dangerous weapon, and having explored all of those issues and discussed those with Mr. Dewberry, we believe that based on our review of the state's discovery compliance that there is sufficient evidence to refute each of those defenses, and we would then assert a general denial defense.

The factual basis supporting Dewberry's guilty plea was also litigated in Dewberry's first application for postconviction relief and affirmed on appeal. *See Dewberry*, 2015 WL 7567514, at *4. We cannot conclude the district court erred in summarily dismissing Dewberry's most recent attempt to repackage and relitigate the same issue.

Third, even assuming Dewberry asserted a claim that he was actually innocent of robbery in the first degree, he is still not entitled to any relief. The purpose of allowing an applicant to present a freestanding

actual innocence claim is to provide a safety-valve for those convicted of an offense but "who ha[ve] committed no crime." *Schmidt*, 909 N.W.2d at 793. "[A]n applicant bringing a freestanding claim of actual innocence is claiming he or she is *factually and actually innocent.*" *Id.* at 797 (emphasis added). Factual and actual innocence requires an applicant to prove he or she was actually innocent of the offense for which he or she was convicted, including any lesser included offenses. *See id.* at 793 ("We see no reason why article I, section 9 would not be enforceable for purposes of vindicating defendants who prove they are factually innocent and believe their incarceration triggers the due process clause."). Thus, in *Schmidt*, the defendant asserted a potentially viable claim of actual innocence where he wholly denied the offense occurred. *See id.* at 783, 793 (presenting evidence that the alleged victim recanted). Dewberry makes no such claim here. His claim thus fails as a matter of law.

Our understanding of actual innocence is consistent with the United States Supreme Court's approach to actual innocence. The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins,* 569 U.S. 383, 392, 133 S. Ct. 1924, 1931 (2013); *see Schmidt*, 909 N.W.2d at 790 (stating the Supreme Court has not yet recognized a freestanding claim of actual innocence). Instead, the Supreme Court has recognized "a gateway claim of actual innocence such that the petitioner may obtain review of the underlying constitutional merits of his or her procedurally defaulted claim." *Schmidt*, 909 N.W.2d at 790 (citing *Herrera*, 506 U.S. at 404, 113 S. Ct. at 862 (majority opinion), and *In re Davis*, 557 U.S. 952, 955, 130 S. Ct. 1, 3 (2009) (Scalia, J., dissenting)). In discussing the concept of actual innocence in this context, the Court has made clear it is referring to factual innocence:

> A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime. Such claims are of course regularly made on motions for new trial after conviction in both state and federal courts, and quite regularly denied because the evidence adduced in support of them fails to meet the rigorous standards for granting such motions. But in rare instances it may turn out later, for example, that another person has credibly confessed to the crime, and it is evident that the law has made a mistake. In the context of a noncapital case, the concept of "actual innocence" is easy to grasp.

*Sawyer v. Whitley*, 505 U.S. 333, 340–41, 112 S. Ct. 2514, 2519–20 (1992). In *Bousley v. United States*, the Court stated " 'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998). This understanding of actual innocence is consistent with the Court's pronouncement that "substantial claim[s] of actual innocence are extremely rare." *Schlup v. Delo*, 513 U.S. 298, 321, 115 S. Ct. 851, 864 (1995); *see also McQuiggin*, 569 U.S. at 386, 133 S. Ct. at 1928 (cautioning that "tenable actual-innocence gateway pleas are rare").

Our conclusion that actual innocence requires proof of factual innocence with respect to the challenged conviction, including any lesser included offenses, aligns with Iowa's innocence-related policy as expressed by the legislature. For example, Iowa Code section 81.10 (2019) provides "[a] defendant who has been convicted of a felony or aggravated misdemeanor . . . may make a motion to the court for an order to require that DNA analysis be performed on evidence collected in the case for which the person stands convicted." In *Schmidt*, this court explained this statute set a "policy that the state should not incarcerate actually innocent people if DNA evidence exonerates them, regardless of their pleas." *Schmidt*, 909 N.W.2d at 789. DNA exoneration goes to factual innocence—i.e., whether a crime was committed, and if so, who committed it. It does not at all bear

on legal innocence related to degrees of guilt. "We see no reason why we should treat people exonerated by DNA evidence differently from people exonerated by other reliable means." *Id.*

Similarly, Iowa Code chapter 663A establishes a cause of action for damages for a wrongfully imprisoned person. To obtain relief under the statute, an individual must prove he or she was actually innocent. That is, the individual must show that "the offense for which the individual was convicted, sentenced, and imprisoned, including any lesser included offenses, was not committed by the individual." Iowa Code § 663A.1(2)(*a*). By enacting the wrongful imprisonment statute, the legislature has expressed a policy in favor of providing economic relief for those persons convicted of an offense where no offense was actually committed or where the defendant did not actually commit it. Like chapter 81 regarding DNA, the wrongful imprisonment statute expresses a policy preference for those factually innocent rather than legally innocent of degrees of criminal liability.

In support of his argument that he is actually innocent of robbery in the first degree, Dewberry asserts that several states recognize freestanding claims of actual innocence. But that assertion does not advance his argument. It is not disputed that several states have rules or statutes authorizing freestanding claims of actual innocence. *See* Ariz. R. Crim. P. 32.1(h) (Westlaw through Aug. 15, 2019 amendments); Ark. Code Ann. §§ 16-112-201 to -208 (West, Westlaw through 2019 Reg. Sess.); Del. Code Ann. tit. 11, § 4504 (West, Westlaw through ch. 219 of 2019–2020 Legis. Sess.); D.C. Code Ann. § 22-4135 (West, Westlaw through Sept. 11, 2019 legislation); Me. Rev. Stat. Ann. tit. 15, § 2138(10) (West, Westlaw through 2019 1st Reg. Sess. and ch. 531 1st Spec. Sess.); Md. Code Ann., Crim. Proc. § 8-301 (West, Westlaw through 2019 Reg. Sess.); Minn. Stat.

Ann. § 590.01 (West, Westlaw through Legis. effective Jan. 1, 2020); Ohio Rev. Code Ann. § 2953.21 (West, Westlaw through Files 1 to 18 of 2019–2020 General Assemb.); Tenn. Code Ann. § 40-30-117(2) (West, Westlaw through 2019 1st Extraordinary Sess.); Utah Code Ann. §§ 78B-9-301, -402 (West, Westlaw through 2019 1st Spec. Sess.); Va. Code Ann. § 19.2-327.10:1 (West, Westlaw through 2019 Reg. Sess.). It is also not disputed that several states have judicial decisions authorizing freestanding claims of actual innocence. *See In re Bell*, 170 P.3d 153, 157 & n.2 (Cal. 2007); *Miller v. Comm'r of Corr.*, 700 A.2d 1108, 1110 (Conn. 1997); *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 543 (Mo. 2003) (en banc); *Marble v. State*, 355 P.3d 742, 748–49 (Mont. 2015); *Montoya v. Ulibarri*, 163 P.3d 476, 487 (N.M. 2007). The fact that other states have authorized freestanding claims of actual innocence does not address the relevant question in this case: whether a claim of actual innocence encompasses a claim in which the defendant admits criminal liability for the offense but contests only the degree of criminal liability for the offense. On this more limited question, Dewberry does not cite any authority supporting his contention.

Our review of the persuasive authority relevant to this question shows a claim of actual innocence does not encompass a claim in which the defendant admits criminal liability but contests only the degree of criminal liability. Federal courts addressing actual innocence claims require the applicant to show he or she is factually innocent of the offense, including lesser included offenses. In *Rozzelle v. Secretary, Florida Department of Corrections*, the United States Court of Appeals for the Eleventh Circuit stated the "Supreme Court's categorical language in actual innocence cases does not suggest that it is narrowly slicing the various degrees of wrongdoing." 672 F.3d 1000, 1016 (11th Cir. 2012).

The court ultimately held the "actual innocence 'gateway' does not extend to petitioners . . . who did the killing and whose alleged 'actual innocence' of a non-capital homicide conviction is premised on being guilty of only a lesser degree of homicide." *Id.* at 1015. Other federal courts agree with this interpretation. *See, e.g., Lampon v. LaValley*, No. 11-895-pr, 2012 WL 5935349, at *2–3 (2d Cir. Nov. 28, 2012) ("Insofar as [Defendant] claims that he acted under extreme emotional distress sufficient to preclude him from forming the requisite intent, he demonstrates only a triable issue of fact, which is not the same as a likelihood that 'no reasonable juror would have convicted him,' on either theory of second degree murder as necessary to establish factual innocence." (quoting *Schlup*, 513 U.S. at 327, 115 S. Ct. at 867)); *Whitener v. Snyder*, Nos. 00–6380, 00–6394, 2001 WL 1178302, at *1 (6th Cir. Sept. 24, 2001) ("At most they have shown legal insufficiency, not the factual innocence necessary" for relief.); *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) ("[The defendant] does not claim that he is innocent of killing [the victim]. Rather, he claims that he is not guilty of first degree murder because he was intoxicated and acted in self-defense. However, these arguments go to legal innocence, as opposed to factual innocence."); *Aviles v. Ryan*, No. CV-16-01863-PHX-GMS (ESW), 2018 WL 4190147, at *5 (D. Ariz. Feb. 27, 2018) ("Petitioner does not dispute that he shot the victim, but asserts that it was in the heat of passion. Petitioner asserts that his second-degree murder conviction 'must be corrected to conform to the . . . evidence that the Plaintiff is guilty of manslaughter a crime not of malice but rather that of passion.' . . . Therefore, to the extent Petitioner presents a *Schlup* gateway claim, it is without merit."); *Danielson v. Lee*, No. 09 Civ. 3839 (LAP), 2015 WL 4879140, at *4 (S.D.N.Y. Aug. 13, 2015), ("Petitioner does not argue that he is innocent of causing [the victim's] death; only that he is innocent of

the legal crime of depraved indifference murder. . . .  Under these circumstances, continued incarceration is not a case of manifest injustice."), *aff'd*, 715 F. App'x 45, 49 (2d Cir. 2017).  *But see Glass v. Vaughn*, 65 F.3d 13, 16 (3d Cir. 1995) ("The Supreme Court has not decided whether the actual innocence test is applicable in a noncapital case when there is evidence that defendant committed the crime but argues that he or she was responsible for a lesser degree of guilt.  For purposes of this opinion, we will assume *arguendo* that the actual innocence test applies.").

Where they have answered the question, other states have also concluded actual innocence requires the defendant be factually innocent rather than legally innocent of a degree of criminal liability.  *See, e.g., State v. De La Rosa*, No. 2 CA–CR 2012–0294–PR, 2012 WL 4356222, at *2 (Ariz. Ct. App. Sept. 24, 2012) (stating the applicant must show innocence with respect to the "underlying offense"); *Miller*, 700 A.2d at 1128 n.26 ("We note that 'factual' and 'actual' innocence have the same meaning and are used interchangeably in this opinion."); *People v. Moore*, 115 N.E.3d 463, 470 (Ill. App. Ct. 2018) ("Second, we agree . . . that a defendant's claim of second degree murder does not constitute a claim of actual innocence under Illinois law.  Rather, to constitute a claim of actual innocence, a defendant's claim has to be able to completely exonerate defendant of the offense in question and all related offenses." (citation omitted)); *People v. Barnslater*, 869 N.E.2d 293, 301 (Ill. App. Ct. 2007) (recognizing that "actual innocence requires that a defendant be free of liability not only for the crime of conviction, but also of any related offenses"); *Reeves v. Nooth*, 432 P.3d 1105, 1116 (Or. Ct. App. 2018) (rejecting claim where petitioner asserted he was "legally innocent, not factually innocent of the crimes for which he was convicted"); *Ex parte Kussmaul*, 548 S.W.3d 606, 641 (Tex.

Crim. App. 2018) ("We have held 'that the term "actual innocence" shall apply, in Texas state cases, only in circumstances in which an accused did not, in fact, commit the charged offense or any of the lesser-included offenses.' " (quoting *State v. Wilson*, 324 S.W.3d 595, 598 (Tex. Crim. App. 2010))).

Our requirement that an applicant prove factual innocence with respect to the challenged offense, including any lesser included offenses, "balances the interest of an innocent defendant and that of the state." *Schmidt*, 909 N.W.2d at 797. Specifically, it balances the liberty interest of an actually innocent person to be free from conviction and criminal sanction with the state's legitimate interests in conserving judicial resources, maintaining the integrity of convictions, and bringing finality to the criminal process. *See id.* at 791, 797; *Clayton v. Iowa Dist. Ct.*, 907 N.W.2d 824, 829 (Iowa Ct. App. 2017) ("[T]he State has a strong policy interest both in maintaining the integrity of sentences that were valid when imposed and in promoting the finality of sentences.").

By expanding the actual innocence claim to claims of legal innocence regarding the degree of offense, as Dewberry requests, we would upset that balance. Under Dewberry's understanding, almost all crimes would be subject to collateral attack:

> Allowing claims of actual innocence to be brought whenever a habeas petitioner argues that he was convicted of an erroneous degree of crime, as in this case, would substantially expand the scope of the actual innocence exception. Almost all crimes with degrees could face similar challenges.

*Rozelle*, 672 F.3d at 1016. We find Dewberry's position impractical and untenable.

We thus hold a postconviction-relief applicant can establish a claim of actual innocence only upon clear and convincing evidence he or she was

factually innocent of the offense of conviction, including any lesser included offenses thereof.

## IV.

For these reasons, we conclude the district court did not err in dismissing Dewberry's claim without an evidentiary hearing. We vacate the judgment of the court of appeals, and we affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**