**STATE ex rel. Joseph AMRINE, Petitioner,**

v.

**Donald P. ROPER, Superintendent, Potosi Correctional Center, Respondent.**

No. SC 84656.

Supreme Court of Missouri, En Banc.

April 29, 2003.

18. 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335.

Sean D. O'Brien, Kent E. Gipson, Kansas City, for State.

Jeremiah W. (Jay) Nixon, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., for Respondent.

RICHARD B. TEITELMAN, Judge.

This case presents the issue of whether a Missouri prisoner sentenced to death can obtain habeas relief on a claim of actual innocence alone, independent of any constitutional violation at trial.[1] Because the continued imprisonment and eventual execution of an innocent person is a manifest injustice, a habeas petitioner under a sentence of death may obtain relief from a judgment of conviction and sentence of death upon a clear and convincing showing of actual innocence that undermines confidence in the correctness of the judgment.

---

1. This Court has original jurisdiction because Amrine was sentenced to death. Rule 91.02(b).

The newly discovered evidence presented by Amrine meets this standard.

While the dissenting opinion suggests that questions of credibility remain, the Court disagrees. In light of the resulting lack of any remaining direct evidence of Amrine's guilt from the first trial, Amrine has already met the clear and convincing evidence standard, for our confidence in the outcome of the first trial is sufficiently undermined by the recantation of all the key witnesses against him in the first trial to require setting aside his conviction and sentence of death. There would be no purpose to a preliminary determination of credibility by this Court sitting as a habeas court, either directly or through a master.

For these reasons, Amrine is entitled to relief from his conviction and sentence and to release subject to the prosecutor's decision whether to pursue new charges against Amrine if the state believes it has sufficient evidence to do so. This Court therefore orders Amrine conditionally discharged from Respondent's custody thirty days from the date the mandate issues in this case unless the state elects to file new charges against Amrine in relation to the murder of which he was convicted.

## FACTS

On October 18, 1985, inmate Gary Barber was stabbed to death in a recreation room at the Jefferson City Correctional Center. Officer John Noble identified inmate Terry Russell as the perpetrator. While being questioned about Barber's murder, Russell claimed that Amrine admitted that he had stabbed Barber. Amrine was charged with Barber's murder.

The state's case against Amrine rested on the testimony of inmate witnesses Terry Russell, Randy Ferguson and Jerry Poe. Russell testified that Amrine admitted to the murder. Ferguson testified that Amrine was walking next to Barber for several minutes before pulling a knife out of his waistband and stabbing Barber. Poe was not asked to describe the murder and testified only that he witnessed Amrine stab Barber. There was no physical evidence linking Amrine to the murder.

Amrine introduced evidence showing that he was not the killer and that Terry Russell was. Officer Noble testified that he saw Barber chase Russell across the recreation room before Barber pulled the knife from his back, collapsed, and died. Six inmates testified that Amrine was playing poker in a different part of the room at the time of the stabbing. Three of those inmates identified Terry Russell as the person that Barber was chasing. None of them named Amrine. The jury found Amrine guilty of Barber's murder, and he was sentenced to death.

This Court affirmed Amrine's conviction and sentence on direct appeal. *State v. Amrine*, 741 S.W.2d 665 (Mo. banc 1987). Amrine filed for post-conviction relief, alleging ineffective assistance of counsel under Rule 29.15. Ferguson and Russell testified at the Rule 29.15 hearing and recanted their trial testimony identifying Amrine as the murderer. Poe did not appear or testify in any of the state post-conviction proceedings, leaving his trial testimony intact. The motion court denied Amrine's petition for relief. This Court affirmed the judgment without reviewing the recantations. *Amrine v. State*, 785 S.W.2d 531 (Mo. banc 1990).

Amrine then petitioned for a writ of habeas corpus in the United States District Court for the Western District of Missouri. Although counsel argued that Amrine was actually innocent given the recantations of Russell and Ferguson, counsel introduced no new evidence of innocence. Because of the continued existence of Poe's testimony, the district court

did not consider matters pertaining to the credibility of Russell and Ferguson and denied Amrine's petition.

Amrine obtained new counsel who located Jerry Poe. Poe offered an affidavit in which he recanted completely his trial testimony, stating that he did not see Amrine stab Barber and that he falsely implicated Amrine. Poe's affidavit, if believed, would contradict the key evidence against Amrine. In light of this new evidence, the Eighth Circuit Court of Appeals ordered a limited remand for the district court to conduct an evidentiary hearing to determine if Poe's evidence Amrine presented was new and reliable and warranted habeas relief under *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).[2] *Amrine v. Bowersox,* 128 F.3d 1222, 1228 (8th Cir.1997).

On remand, Amrine presented testimony from former inmates Russell and Dean, former corrections officer Noble, and videotaped testimony from Poe and Ferguson. The district court denied Amrine's claim on the basis that only Poe's testimony was "new evidence" and that his recantation was unreliable. The district court did not consider Amrine's other evidence, including the recantations of Russell and Ferguson, because that evidence was not new. The Eighth Circuit affirmed the district court's judgment, holding that the district court properly focused on Poe's testimony because the testimony from Russell, Ferguson, Dean and Noble was not new. *Amrine v. Bowersox,* 238 F.3d 1023 (8th Cir.2001). The United States Supreme Court denied certiorari. *Amrine v. Luebbers,* 534 U.S. 963, 122 S.Ct. 372, 151 L.Ed.2d 283 (2001).

Amrine petitions this Court for a writ of habeas corpus, arguing that he is actually innocent of the Barber murder. Because the recantations were made over the course of years and between rounds of federal court proceedings, no court has addressed, at once, all of the evidence of Amrine's innocence. This Court is the first forum in which all of the existing evidence of innocence will be considered.

## DISCUSSION

Amrine contends that he is entitled to habeas relief because all of the evidence now available establishes that he is actually innocent of the Barber murder. Amrine's claim for habeas relief rests on the proposition that his continued incarceration and eventual execution for a murder he did not commit constitutes a manifest injustice entitling him to habeas relief even though his trial and sentencing were otherwise constitutionally adequate. This case thus presents the first impression issue of whether and upon what showing a petitioner who makes a freestanding claim of actual innocence is entitled to habeas corpus relief from his conviction and sentence.

## I. Habeas Review of Claims of Constitutional Error

 Habeas corpus is the last judicial inquiry into the validity of a criminal conviction and serves as "a bulwark against convictions that violate fundamental fairness." *Engle v. Isaac,* 456 U.S. 107, 126, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). To that end, Missouri law provides that a writ of habeas corpus may be issued when a person is restrained of his or her liberty in violation of the constitution or laws of the state or federal government. *State ex rel. Nixon v. Jaynes,* 63 S.W.3d 210, 214 (Mo.

---

**2.** Under *Schlup,* a petitioner may obtain federal habeas review of defaulted constitutional claims if new evidence establishes that it is more likely than not that no reasonable juror would convict in light of the new evidence.

banc 2001). Even though the interests protected by the writ are fundamental, relief is limited in order to avoid unending challenges to final judgments. Habeas relief, therefore, is generally denied if the petitioner raises procedurally barred claims that could have been raised at an earlier stage or if other adequate remedies are available. *Clay v. Dormire*, 37 S.W.3d 214, 217 (Mo. banc 2000). Exceptions to this rule are recognized when the petitioner raises a jurisdictional issue, can demonstrate "cause and prejudice," or in extraordinary circumstances, when the petitioner can demonstrate that a "manifest injustice" would result unless habeas relief is granted. *State ex rel. Nixon v. Jaynes*, 63 S.W.3d at 215; *State ex rel. Simmons v. White*, 866 S.W.2d 443, 446 (Mo. banc 1993).

Amrine's petition for habeas relief turns on the application of the manifest injustice standard to his claim of actual innocence. The state argues that Amrine's right to habeas relief depends on whether he meets the standards discussed in *Clay* for habeas relief. *Clay* discussed the circumstances in which a prisoner who has failed to raise a claim of constitutional error within the time period allowed under Missouri law may nonetheless obtain review of that claim of constitutional error. *Clay* adopted the federal standard set out in *Schlup v. Delo*, 513 U.S. at 327, 115 S.Ct. 851, and required a showing of either (1) cause for failing to raise the claim in a timely manner and prejudice from the constitutional error asserted, or (2) a showing by the preponderance of the evidence of

actual innocence, and this would meet the manifest injustice standard for habeas relief under Missouri law. A showing either of cause and prejudice or of actual innocence acts as a "gateway" that entitles the prisoner to review on the merits of the prisoner's otherwise defaulted constitutional claim. *Clay*, 37 S.W.3d at 217.

## II. Freestanding Claims of Actual Innocence As Manifest Injustice

Here, however, Mr. Amrine does not assert actual innocence merely as a gateway to allow consideration of an underlying constitutional claim. Rather, he makes what has been termed a "freestanding" claim of actual innocence.

In *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), the United States Supreme Court discussed the viability of a freestanding claim of actual innocence as a basis for habeas relief in the federal courts. Although the Court determined that federalism concerns militated against recognizing actual innocence as a basis for federal habeas relief, the Court assumed for the sake of argument that:

in a capital case a truly persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim.

*Id.* at 417, 113 S.Ct. 853.[3] In other words, as *Herrera* recognized, even if a federal

---

**3.** In separate opinions, six members of the Court suggested that there may be circumstances in which it would be constitutionally intolerable under the federal constitution. Specifically, Justice O'Connor, joined by Justice Kennedy, stated that "the execution of a legally and factually innocent person would be a constitutionally intolerable event," *Id.* at 420, 113 S.Ct. 853, although she then con-

cluded that the existence of federal relief for such a person need not be addressed in the case before the court. Justice White stated that "a persuasive showing of actual innocence made after trial ... would render unconstitutional the execution of the petitioner in this case." *Id.* at 429, 113 S.Ct. 853, but also failed to finally decide the issue on the record before the Court. By contrast, Justice

court were found not to have jurisdiction to review a state conviction and sentence in the absence of a federal constitutional issue, this would not deprive a state court from reviewing the conviction and sentence if its own state habeas law so permitted. The issue now before this Court, then, is whether, in the words of *Herrera*, Missouri has left a "state avenue open to process such a claim." *Id.* This Court finds that it has done so.

■■ Having recognized the prospect of an intolerable wrong, the state has provided a remedy. As noted, it is not the remedy set out in *Clay*, for, while the *Clay* standard is appropriate for cases involving procedurally defaulted constitutional claims, it fails to account for those rare situations, such as Amrine's, in which a petitioner sets forth a compelling case of actual innocence independent of any constitutional violation at trial. This is all the more true here, where the execution of a potentially innocent man is at stake, for the death penalty is fundamentally different from other cases in which innocence is asserted after a fair trial. For this reason, uniquely under Missouri's death penalty statute, section 565.035.3, this Court is charged with determining not merely the sufficiency but also the "strength of the

evidence." *See State v. Chaney,* 967 S.W.2d 47 (Mo. banc 1998). The obvious purpose is to avoid wrongful convictions and executions. The duty to do so in death penalty cases is, just as obviously, a continuing one. It is difficult to imagine a more manifestly unjust and unconstitutional result than permitting the execution of an innocent person. Therefore, it is incumbent upon the courts of this state to provide judicial recourse to an individual who, after the time for appeals has passed, is able to produce sufficient evidence of innocence to undermine the habeas court's confidence in the underlying judgment that resulted in defendant's conviction and sentence of death. The writ of habeas corpus is the appropriate means for Amrine to assert this claim.[4]

III. *The Burden of Proof of Actual Innocence*

■ A freestanding claim of actual innocence is evaluated on the assumption that the trial was constitutionally adequate. Accordingly, the evidence of actual innocence must be strong enough to undermine the basis for the conviction so as to make the petitioner's continued incarceration and eventual execution manifestly unjust even though the conviction was otherwise the product of a fair trial. *Cf. Simmons,*

Blackmun, joined in his dissent by Justices Souter and Stevens, stated that executing an innocent person is the "ultimate arbitrary imposition" and unquestionably violates both the Eighth and Fourteenth Amendments. *Id.* at 437, 113 S.Ct. 853.

Article I, section 10 of the Missouri constitution similarly provides that "no person shall be deprived of life, liberty or property without due process of law." The constitutional guarantee of due process protects the individual from the arbitrary exercise of governmental power. Even were there no federal constitutional violation in the execution of an innocent person, this Court could find as a matter of state law that, as the purpose of the criminal justice system is to convict the guilty and

free the innocent, it is completely arbitrary to continue to incarcerate and eventually execute an individual who is actually innocent. Because of our finding that such an execution would constitute a manifest injustice in this case, however, this Court, too, avoids finally resolving this issue today.

4. Other states have reached a similar conclusion and presently allow habeas relief on a freestanding claim of actual innocence. *State v. Washington,* 171 Ill.2d 475, 216 Ill.Dec. 773, 665 N.E.2d 1330, 1337 (1996); *State ex rel. Holmes v. Court of Appeals,* 885 S.W.2d 389, 397 (Tex.Crim.App.1994); *Summerville v. Warden, State Prison,* 229 Conn. 397, 641 A.2d 1356, 1369 (1994); *In re Lindley,* 29 Cal.2d 709, 177 P.2d 918 (1947).

866 S.W.2d at 446; *Schlup,* 513 U.S. at 316, 115 S.Ct. 851 (discussing *Herrera*).

At the same time, because an actual innocence claim necessarily implies a breakdown in the adversarial process, the conviction is not entitled to the nearly irrebuttable presumption of validity afforded to a conviction on a direct appeal challenging the sufficiency of the evidence. If habeas relief were conditioned on a finding that no rational juror could convict the petitioner after introduction of the new evidence, it would be impossible to obtain relief because exculpatory evidence cannot outweigh inculpatory evidence under that standard. *See State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). Neither is this Court required to impose as high a standard as would a federal court in reviewing a freestanding claim of actual innocence, for, as discussed, this Court is not affected by the federalism concerns that limit the federal courts' jurisdiction to consider non-constitutional claims of actual innocence.

Conversely, it is appropriate that the burden of proof is heavier than the "more likely than not" standard governing *Clay* gateway claims of innocence because relief under *Clay* is premised upon a serious constitutional defect at trial and the conviction is worthy of less confidence by the habeas court. The appropriate burden of proof for a habeas claim based upon a freestanding claim of actual innocence should strike a balance between these competing standards and require the petitioner to make a clear and convincing showing of actual innocence that undermines confidence in the correctness of the judgment. *See Ex parte Joe Rene Elizondo,* 947 S.W.2d 202, 205 (Tex.Crim.App. 1996); *Miller v. Commissioner of Correction,* 242 Conn. 745, 700 A.2d 1108, 1132 (1997).

The burden of establishing a fact by clear and convincing evidence is heavier than the "preponderance of the evidence" test of ordinary civil cases and is less than the "beyond reasonable doubt" instruction that is given in criminal cases. Evidence is clear and convincing when it "instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re T.S.,* 925 S.W.2d 486, 488 (Mo.App. E.D.1996).

### IV. *Application*

Amrine has met his burden of providing clear and convincing evidence of actual innocence that undermines our confidence in the correctness of the judgment. In reviewing a claim under this standard, the evidence supporting the conviction must be assessed in light of all of the evidence now available. Although the evidence at trial was constitutionally sufficient to support the conviction, the evidence was not overwhelming. There was significant evidence indicating Amrine's innocence from the beginning. At trial, officer Noble identified Terry Russell as the perpetrator. He did not identify Amrine as the killer. Nor did the six inmates who testified that Amrine was playing cards in another part of the recreation room. There was no physical evidence linking Amrine to the murder. Instead, Amrine was convicted solely on the testimony of three fellow inmates, each of whom have now completely recanted their trial testimony.

This case thus presents the rare circumstance in which no credible evidence remains from the first trial to support the conviction. This Court, sitting as an original habeas court, determines based on this record that under these rare circumstances, there is clear and convincing evi-

dence of Amrine's innocence. As such, confidence in his conviction and sentence are so undermined that they cannot stand and must be set aside.

 As the evidence was sufficient at Amrine's first trial to convict, however, there is no double jeopardy bar to retrial, if the state believes it can produce enough evidence, based on such evidence as it may have, even recanted evidence,[5] to once again bring this case to a jury. Given the weakness of the evidence and the long delay since the original trial, during which time Amrine has been imprisoned based on a conviction this Court herein sets aside, however, an expeditious and final resolution of this case is imperative.

Therefore, this Court orders Amrine conditionally discharged from Respondent's custody thirty days from the date the mandate issues in this case unless the state elects to file new charges against Amrine in relation to the murder of which he was convicted.

WHITE and STITH, JJ., concur.

WOLFF, J., concurs in separate opinion.

BENTON, J., dissents in separate opinion filed.

LIMBAUGH, C.J., concurs in opinion of BENTON, J.

PRICE, J., dissents in separate opinion filed.

MICHAEL A. WOLFF, Judge, concurring.

I concur in the principal opinion. I write separately to emphasize the eviden-

tiary aspects of this case that call for the habeas corpus remedy recognized by the principal opinion, rather than the remedy favored by either dissenting opinion.

After a judgment in a death penalty case is final, state courts are not limited to claims of constitutional violations when actual innocence is claimed. State courts can be concerned about—and available to grant relief to—an innocent person even where there is no constitutional violation.

Both the principal opinion and the dissents recognize that the state court's writ of habeas corpus is the appropriate remedy in cases of actual innocence. Even the dissents recognize that the judgment against Amrine is not entitled to the respect normally accorded a final judgment.

This is a highly unusual case. All three witnesses who told the original trial court jury that Amrine killed Barber have recanted their testimony.

The law usually does not condone recantations; they are not normally recognized to overturn a lawful conviction and sentence. *See State v. Harris*, 428 S.W.2d 497, 502 (Mo.1968).

While relief by habeas based on actual innocence and manifest injustice is not limited to death penalty cases,[1] death penalty cases are different. For one thing, the death penalty statute requires this Court to assess the "strength of the evidence" in determining whether to uphold a death sentence. Section 565.035.3. *See State v. Chaney*, 967 S.W.2d 47 (Mo. banc 1998). For no other crime is an appellate court given this power to review a sentence.

---

5. See section 491.074, which allows prior inconsistent testimony to be received as substantive evidence of a criminal offense. *See also State v. Blankenship*, 830 S.W.2d 1 (Mo. banc 1992).

1. Missouri has, for example, a statute that gives a right to review an otherwise final judgment where DNA evidence may exist to exonerate a convicted felon. Section 547.035, RSMo 2002; section 547.037, RSMo 2002.

For this reason, it is particularly true in death penalty cases that the duty to assess the strength of the evidence is an ongoing duty. The applicable standard in habeas corpus proceedings is to prevent "manifest injustice." *State ex rel. Nixon v. Jaynes,* 63 S.W.3d 210 (Mo. banc 2001). Execution of an innocent person would be manifestly unjust, even if that person received a constitutionally adequate trial.

**Who Should Determine Which Time the Witnesses Were Lying?**

With the witnesses' recantations, we do not know whether Amrine is actually innocent. We similarly do not know whether he is guilty, despite the final judgment in his case. The question is: which time were these three witnesses lying? When they testified against Amrine, or when they recanted? As Judge Benton aptly notes, facts do not prove themselves.

What we do know is that all three witnesses—upon whom Amrine's conviction and sentence of death solely depend—are liars.

Judge Benton would appoint a master who would serve this Court by listening to testimony and making an assessment of credibility to guide this Court in determining which time these witnesses were lying. In a proceeding with this Court's master, Amrine would have the burden of showing that the original testimony was false. It would be Amrine's burden to overcome the respect that is due to the final judgment against him. If the finder of fact is unpersuaded—that is, that this Court through its master cannot know for sure which time the witnesses were lying—Amrine's original judgment would stay in force.

The circumstances of this case favor the remedy of a new trial, if the state chooses not to release Amrine but to try him again for this killing. The remedy chosen in the principal opinion seems more suitable, because if there is a credibility determination

to be made, it will be made by a jury. There is no physical evidence linking Amrine to the murder. The correctional officer, Officer Noble, identified another man as the killer, and six inmates testified that Amrine was playing cards in another part of the recreation room when the attack occurred.

In the peculiar circumstances of this case, the state should get no benefit from the original judgment because it is based solely on the testimony of liars. The state, not Amrine, should have the burden of persuasion.

If the state chooses to call the three recanted witnesses, the state can use their original trial testimony as impeachment, if they testify consistently with their recanting. Prior inconsistent testimony can be received and used as substantive evidence of a criminal offense. Section 491.074; *State v. Blankenship,* 830 S.W.2d 1 (Mo. banc.1992). The state may have other evidence that it did not choose to use at the original trial; it may use the evidence if it decides to try Amrine again for this crime. From the record as it appears here, however, it seems that the state only has the testimony of these three witnesses—now factually if not legally discredited—to seek to convict Amrine.

Should the state again try Amrine? From this record, he does not look guilty. But perhaps the state has a better view.

DUANE BENTON, Judge, dissenting.

I would appoint a master to hold a hearing.

Joseph Amrine alleges clear and convincing evidence of actual innocence. Allegations, however, do not prove themselves. See *State v. Twenter,* 818 S.W.2d 628, 635 (Mo. banc 1991); *Newman v. State,* 669 S.W.2d 617, 619 (Mo.App.1984). Habeas corpus is an original action, and Amrine

has the burden to prove he is entitled to relief. See *State ex rel. Nixon v. Jaynes*, 73 S.W.3d 623, 624 (Mo. banc 2002). Based on allegations alone, this Court should not free a person convicted after a trial, which was affirmed on appeal; a post-conviction hearing, also affirmed by this Court; and several reviews by the federal courts. See *State v. Amrine*, 741 S.W.2d 665 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *Amrine v. State*, 785 S.W.2d 531 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990); *Amrine v. Bowersox*, 128 F.3d 1222 (8th Cir. banc 1997), *cert. denied*, 523 U.S. 1123, 118 S.Ct. 1807, 140 L.Ed.2d 946 (1998); *Amrine v. Bowersox*, 238 F.3d 1023 (8th Cir.), *cert. denied*, 534 U.S. 963, 122 S.Ct. 372, 151 L.Ed.2d 283 (2001).

Clearly, "the state relied primarily on three witnesses at trial." *Amrine v. Bowersox*, 128 F.3d at 1223. These were inmates Randy Ferguson, Terry Russell, and Jerry Poe. *Id.*

A state trial judge, at a post-conviction hearing, found that Randy Ferguson's recantation was not credible, because his "testimony about threats was 'unworthy of belief' and designed merely to help a fellow inmate." *Id.* at 1224. The state post-conviction judge also found that Terry Russell's recantation was not credible, because it was "motivated by the desire to gain the good will of Amrine so that he could be released from protective custody." *Id.*

In Amrine's federal habeas corpus case, the Eighth Circuit remanded for a hearing to evaluate the testimony of the third witness, Jerry Poe. See *Amrine v. Bowersox*, 128 F.3d at 1230. The district court "found that Poe was not a credible witness and that his recantation could not be relied upon." *Amrine v. Bowersox*, 238 F.3d at 1028, 1029. The Eighth Circuit agreed,

stating: "This is a credibility determination which is entitled to great deference, and we see no reason to overturn it." *Id.*

Every court, until today, has found that the recantations were not credible. Credibility is the key to this case. A hearing is appropriate. *Rules 91.15, 91.17; section 532.310 RSMo 2000;* see *State ex rel. Haley v. Groose*, 873 S.W.2d 221, 222 (Mo. banc 1994). Because I would appoint a master, I dissent.

WILLIAM RAY PRICE, JR., Judge, dissenting.

I dissent from the principal opinion for two reasons. First, Mr. Amrine has not yet established that he is entitled to habeas relief from his conviction of guilt. Second, Mr. Amrine has established that his sentence of death cannot now stand.

## I. Conviction of Guilt

Habeas corpus is available to Mr. Amrine if he establishes that his conviction and sentence constitute a manifest injustice. *Clay v. Dormire*, 37 S.W.3d 214, 217 (Mo. banc 2000); *State ex rel. Simmons v. White*, 866 S.W.2d 443, 446 (Mo. banc 1993). This requires Mr. Amrine to prove his actual innocence. *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 216 (Mo. banc 2001). To prove his innocence, Mr. Amrine must show "that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 328–29, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Although the majority indicates that they have lost confidence in Mr. Amrine's final judgment of conviction and sentence of death, loss of confidence is not the applicable standard for relief from Mr. Amrine's conviction of guilt by means of habeas corpus—actual innocence is the standard.

The recantations of witnesses Terry Russell, Randy Ferguson, and Jerry Poe merely raise the question of whether these witnesses were lying at Mr. Amrine's trial, where a jury believed them, or whether they are lying now. This is a factual issue that requires resolution prior to any statement by us, from a cold written record, that Mr. Amrine is actually innocent.

Section 491.074, RSMo 2000,[1] specifically provides that these three witnesses' prior testimony remains as substantive evidence against Mr. Amrine, even though they now tell a different story. It says:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

This statute has been upheld and applied in *State v. Blankenship*, 830 S.W.2d 1, 12 (Mo. banc 1992). Accordingly, I concur with the separate opinion of Judge Benton and would refer this matter to a master for a hearing to determine, as a matter of fact and in light of all of the evidence, whether Mr. Amrine is actually innocent and, accordingly, whether he is entitled to relief from his conviction under habeas corpus.

## II. Death Sentence

Mr. Amrine need *not*, however, prove actual innocence for relief from his sentence of death. The Supreme Court of Missouri is charged under section 565.035.3 with determining whether the death penalty is excessive or is disproportionate considering, among other things, "the strength of the evidence." *State v. Chaney*, 967 S.W.2d 47, 60 (Mo. banc 1998); *see also State v. Barriner*, 34 S.W.3d 139, 153 (Mo. banc 2000) (Price, C.J., dissenting). I believe this is a continuing duty that must be addressed in light of new evidence such as the recantations in this instance. An assessment of the death penalty cannot withstand this analysis when it is based solely upon the testimony of witnesses all of whom recant, even though the recantations are not believed.

In this respect the loss of confidence standard utilized by the majority is applicable. There can be little doubt that the recantations substantially undercut any confidence that can exist in the assessment of the death penalty against Mr. Amrine, and it should now be set aside.

---

1. All statutory references are to RSMo 2000 unless otherwise stated.