

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE ex rel. BRIAN DORSEY, | ) | *Opinion issued March 20, 2024* |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. SC100388 |
| | ) | |
| DAVID VANDERGRIFF, | ) | |
| | ) | |
| Respondent. | ) | |
| and | | |
| IN RE: BRIAN DORSEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. SC100486 |
| | ) | |
| DAVID VANDERGRIFF, | ) | |
| Warden, Potosi Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

### ORIGINAL PROCEEDINGS IN HABEAS CORPUS

On December 13, 2023, this Court issued a warrant of execution for Brian Dorsey

and ordered Dorsey's previously imposed death sentence to be carried out on April 9, 2024.

Subsequently, Dorsey filed two separate petitions for writ of habeas corpus with this Court,

claiming: (1) he is actually innocent of the first-degree murder offenses he pleaded guilty to committing because he was incapable of deliberation at the time of the offenses due to drug-induced psychosis; (2) he was denied effective assistance of trial counsel due to a flat-fee arrangement that created a conflict of interest; and (3) his execution would violate the Eighth Amendment because he belongs to a unique class of persons for whom the penological goals supporting capital punishment are no longer met.

After careful review of his habeas petitions, supporting documents, and briefing, this Court finds Dorsey fails to present any legally cognizable claims for habeas relief. Dorsey does not deny he committed the murders and has not established he is actually innocent of first-degree murder. This Court previously found Dorsey's claim of ineffective assistance of counsel due to a conflict of interest lacks merit, and Dorsey is procedurally barred from raising this same claim again in his writ petition. Finally, Dorsey's Eighth Amendment claim is without merit and, ultimately, a plea for clemency, which is beyond this Court's review and authority. Accordingly, this Court denies both petitions for writ of habeas corpus.[1]

## Legal and Factual Background[2]

On December 23, 2006, Brian Dorsey called his cousin, S.B., and told her he needed help. Dorsey needed to borrow money to pay two drug dealers who were in his apartment.

---

[1] This Court may deny issuance of a writ of habeas corpus without issuing an accompanying opinion. *See* Rule 84.24. An opinion is issued in this case, however, because an execution date is pending and to demonstrate the Court's careful review and consideration of Dorsey's claims.

[2] Many of the facts for this section are taken from *State v. Dorsey*, 318 S.W.3d 648 (Mo. banc 2010), and *Dorsey v. State*, 448 S.W.3d 276 (Mo. banc 2014).

S.B.'s husband, B.B., called a friend to help, then the couple drove to Dorsey's apartment. After S.B. and B.B. arrived, the two drug dealers left. The couple drove Dorsey back to the home they shared with their four-year-old daughter to spend the night. Dorsey spent the evening drinking and playing pool in the couple's "shop" with family and friends. Before they played pool, a friend moved B.B.'s unloaded, single-shot shotgun off the pool table to another location in the shop.

Eventually, the couple and their child went to bed. The couple slept in one room and the child in another. Dorsey retrieved the single-shot shotgun from the shop and entered the couple's room. Dorsey loaded the shotgun, fatally shot S.B. at close range, emptied the chamber, reloaded the shotgun, and fatally shot B.B. at close range. Dorsey then raped S.B.'s body and poured bleach over her torso and genital area. Before fleeing the scene, Dorsey locked the couple's bedroom door and stole various items of personal property and S.B.'s car.[3] After Dorsey left, he drove around in S.B.'s car and attempted to sell the stolen items to repay his drug debt. The next day, after the couple did not show up for a family gathering, S.B.'s parents went to the couple's house. There, S.B.'s parents found the couple's four-year-old daughter, who told them her parents had been locked in the bedroom all day. When S.B.'s parents were able to get into the locked bedroom, they found the couple dead.

---

[3] Dorsey's car was at the couple's house at the time, but the car was inoperable as B.B., who was a mechanic, was in the process of making repairs to the car at B.B.'s own expense.

On December 26, 2006, Dorsey turned himself in to police.  After being read his *Miranda*[4] rights, Dorsey confessed, telling police they had the "right guy concerning the deaths of [the couple]."  Dorsey was charged with two counts of first-degree murder.  The State sought the death penalty pursuant to section 565.020.2.[5]  Dorsey qualified for appointed counsel, and the Missouri Public Defender's Office retained two private attorneys who had experience handling capital cases to represent Dorsey.  The public defender's office paid the attorneys a flat fee for their representation.  Funds independent of counsel's flat fee were available if counsel needed to hire an expert or an investigator or if counsel needed other resources.  In preparation for trial, Dorsey's trial counsel had a neuropsychologist and clinical psychologist meet Dorsey and perform testing on him.

In March 2008, after consultation with trial counsel, Dorsey pleaded guilty to the two counts of first-degree murder.  At the plea hearing, Dorsey answered "yes" to the circuit court's questions as to whether he killed both people, did so after deliberation, and knowingly caused their deaths by shooting them.  The circuit court then held a jury trial for the penalty phase.  Dorsey's counsel called nine witnesses, including one expert witness – a clinical psychologist – who prepared a psychological summary detailing Dorsey's family history, psychiatric history, and substance abuse history, all of which was admitted into evidence and submitted to the jury.  The psychologist and one of Dorsey's family members also testified about Dorsey's history of mental health problems, suicide attempts,

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).
[5] References to section 565.020 are to RSMo 2000.  All other statutory references are to RSMo 2016, unless specified otherwise.

and drug and alcohol addictions. Dorsey testified in his own defense and told the jury he was sorry for what he had done. The jury found seven aggravating factors and returned a verdict recommending Dorsey be sentenced to death for each murder. The circuit court sentenced Dorsey accordingly.

This Court affirmed Dorsey's convictions on direct appeal, *State v. Dorsey*, 318 S.W.3d 648 (Mo. banc 2010), and the United States Supreme Court denied Dorsey's request to review his case, *Dorsey v. Missouri*, 562 U.S. 1067 (2010). Dorsey filed a *pro se* Rule 29.15 motion for postconviction relief. The circuit court appointed counsel to represent Dorsey. His counsel filed an amended motion arguing, among many other arguments, that trial counsel was ineffective based on a conflict of interest arising out of the flat-fee arrangement and for not investigating a diminished capacity defense or presenting mitigating evidence relating to Dorsey's state of mind. After a three-day evidentiary hearing, the circuit court entered findings and a judgment overruling Dorsey's postconviction relief motion. This Court affirmed the circuit court's ruling. *Dorsey v. State*, 448 S.W.3d 276 (Mo. banc 2014).

Dorsey then filed a petition for habeas relief in the federal district court arguing, in part, his trial counsel had a conflict of interest because of the flat-fee arrangement and was ineffective for failing to present a diminished capacity defense. The district court denied Dorsey's petition, *Dorsey v. Steele*, No. 4:15-08000-CV-RK, 2019 WL 4740518 (W.D. Mo. Sept. 27, 2019), and the Eighth Circuit affirmed. *Dorsey v. Vandergriff*, 30 F.4th 752 (8th Cir. 2022). Dorsey requested the United States Supreme Court review the denial of his federal habeas petition, but the Supreme Court again denied the request. *Dorsey v.*

5

*Vandergriff*, 143 S. Ct. 790 (2023).[6] In February 2023, the State filed a motion to set an execution date, which this Court sustained after considering the State's motion and Dorsey's responsive pleadings.

On December 13, 2023, this Court issued an execution warrant and set the execution date for April 9, 2024. On December 22, 2023, Dorsey filed a petition for writ of habeas corpus in this Court, claiming (1) his execution would violate the Sixth Amendment because he was denied effective assistance of counsel in that his trial counsel's flat-fee arrangement created a conflict of interest and (2) he is actually innocent of first-degree murder because he was incapable of deliberation due to drug-induced psychosis. Dorsey asks this Court to issue a writ prohibiting his execution and to appoint a special master to conduct an evidentiary hearing. On February 25, 2024, Dorsey filed another petition for writ of habeas corpus in this Court, claiming his execution would violate the Eighth Amendment because he belongs to a unique class of persons for whom the penological goals supporting capital punishment are no longer met. In his second writ petition, Dorsey

---

[6] Dorsey also filed a motion in the federal district court requesting an order requiring Potosi Correctional Center and the Missouri Department of Corrections to transport him to a private facility to conduct an MRI scan to aid his request for clemency. The district court overruled Dorsey's motion. *Dorsey v. Steele*, No. 4:15-CV-08000-RK, 2023 WL 159781 (W.D. Mo. Jan. 11, 2023). The Eighth Circuit affirmed. *Dorsey v. Vandergriff*, No. 23-1078, 2023 WL 4363640 (8th Cir. July 6, 2023). The United States Supreme Court also denied Dorsey's request to review this motion. *Dorsey v. Vandergriff*, 144 S. Ct. 504 (2023). Dorsey additionally filed a lawsuit in the federal district court against three Missouri Department of Corrections officials, alleging the department's execution protocol violates several of his constitutional rights. The district court sustained the officials' motion to dismiss for failure to exhaust administrative remedies and dismissed the lawsuit without prejudice. *Dorsey v. Foley*, No. 4:24-CV-00198-HEA, 2024 WL 940345 (E.D. Mo. Mar. 4, 2024).

asks this Court to convert his death sentence to a sentence of life without the possibility of parole.

## Standard of Review

"[A] writ of habeas corpus may be issued when a person is restrained of his or her liberty in violation of the constitution or laws of the state or federal government." *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 545 (Mo. banc 2003). A writ of habeas corpus will be denied if it "raises procedurally barred claims that could have been raised at an earlier stage . . . ." *Id.* at 546. Petitioners can overcome this procedural bar by showing a jurisdictional issue, cause and prejudice, or that manifest injustice would occur without habeas relief. *Id.* Claims of actual innocence may give rise to habeas relief under the manifest injustice standard either as a gateway to review the merits of the petitioner's otherwise defaulted constitutional claims or, in some cases, as a freestanding claim of actual innocence.[7] *Id.* at 546-48. Both gateway and freestanding claims of actual innocence require "new evidence to support the claim that was not available at trial . . . ." *State ex rel. Barton v. Stange*, 597 S.W.3d 661, 664 n.4 (Mo. banc 2020) (per curiam). A habeas petitioner bears the burden of proof to show he or she is "entitled to habeas corpus relief." *State ex rel. Lyons v. Lombardi*, 303 S.W.3d 523, 525 (Mo. banc 2010).

---

[7] "[A] gateway claim of actual innocence argues that a petitioner did *not* receive a constitutionally adequate trial, and that it would be manifestly unjust not to review procedurally barred claims to that effect, where newly discovered evidence demonstrates actual innocence by a preponderance of the evidence." *In re Lincoln v. Cassady*, 517 S.W.3d 11, 17 (Mo. App. 2016). In contrast to a gateway claim of innocence, "[a] freestanding claim of actual innocence is evaluated on the assumption that the trial was constitutionally adequate[,]" but a conviction should be set aside nonetheless because the defendant did not commit the crime. *Amrine*, 102 S.W.3d at 547.

7

**Analysis**

**I.      Actual Innocence**

Dorsey alleges he is actually innocent of first-degree murder, and, therefore, his death sentences are a manifest injustice.  Specifically, Dorsey alleges he is innocent of first-degree murder because he lacked the mental state to commit the offense.  To commit the offense of first-degree murder, the State must establish beyond a reasonable doubt that the defendant knowingly caused the death of another person after "deliberation upon the matter."  Section 565.020.  "Deliberation" means "cool reflection for any length of time no matter how brief[.]"  Section 565.002(3).[8]  Dorsey contends he was incapable of deliberating upon the matter due to drug-induced psychosis brought on by crashing from crack-cocaine intoxication.  Dorsey generally alleges that, at the time of the murders, he had not slept for more than 72 hours, was intoxicated from beer and vodka, was suicidal, had major depression and a substance abuse disorder, and was withdrawing from crack cocaine, which routinely caused him to experience hallucinations and paranoid delusions.

Relying on this claim that he was incapable of deliberation, Dorsey first raises a freestanding claim of innocence.  To make a freestanding claim of actual innocence, the petitioner must make a clear and convincing showing of his innocence.  *Amrine*, 102 S.W.3d at 548.  "Evidence is clear and convincing when it instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true."  *Id.* (internal quotation omitted).

---

[8] References to section 565.002 are to RSMo 2000.

Dorsey's claim of actual innocence does not consist of evidence that he did not kill S.B. or B.B. *See, e.g.*, *Amrine*, 102 S.W.3d at 548-49 (the only decision from this Court applying a freestanding claim of actual innocence to set aside a conviction after the Court relied on new evidence clearly and convincingly establishing the habeas petitioner was actually innocent because he did not kill the victim). In fact, Dorsey does not deny he murdered the couple. Rather, his evidence of actual innocence consists of affidavits from two expert witnesses, Dr. John Matthew Fabian and Dr. Edward D. French, suggesting Dorsey was incapable of deliberation because he was in a state of drug-induced psychosis at the time of the murders. As a result, Dorsey argues, he legally could not have committed first-degree murder because he did not deliberate or coolly reflect on the homicides.[9] This evidence, however, does not establish a "clear and convincing" showing of innocence in light of the significant evidence of his deliberation at the time of the murders.

Neither expert indicates he spoke with Dorsey; instead both relied on transcripts, mental health records, declarations, and correctional records. From Dr. French's review of these materials, he opines Dorsey's prior paranoia and hallucinations during heavy cocaine usage "suggests" he was experiencing a cocaine-induced psychosis on the night of the murders. This possible psychosis, combined with "symptoms that occur during cocaine withdrawal, coupled with lack of sleep, and binge use of cocaine and alcohol would have

---

[9] Even if this Court were to accept Dorsey's argument that he did not deliberate on the homicides, Dorsey would still be guilty of second-degree murder pursuant to section 565.021, RSMo 2000. *See State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010) ("Without evidence of deliberation, an intentional killing is second-degree murder . . . ."); *State v. McLaughlin*, 265 S.W.3d 257, 270 (Mo. banc 2008) ("Conventional second-degree murder is also a lesser-included offense of first-degree murder . . . .").

9

diminished Mr. Dorsey's cognitive abilities, in particular his judgment." Dr. Fabian concluded he had "concerns" Dorsey's combination of psychosocial stressors, psychiatric symptoms, and effects of substances on his brain functioning impaired Dorsey's cognitive, emotional, and behavioral capacity and overall mental state at the time of the offenses. Dr. Fabian also stated these factors "potentially" compromised Dorsey's capacity to be aware of his actions and their consequences. Neither Dorsey nor his experts are able to claim with any certainty that he was actually experiencing psychosis at the time of the murders.

This evidence does not clearly and convincingly persuade the Court that Dorsey lacked the ability to deliberate when weighed against the evidence showing the murders were premeditated. The State presented significant evidence of Dorsey's deliberation, including that Dorsey retrieved the unloaded single-shot shotgun from the shop, loaded the shotgun to shoot S.B., emptied the chamber, reloaded the shotgun to shoot B.B., poured bleach on S.B.'s body to cover up evidence of the rape, locked the bedroom door, stole their property to sell, turned himself in to the police, and identified himself as the one the police needed to talk to about the murders. Dorsey, therefore, cannot establish a freestanding claim of actual innocence.

Dorsey also alleges he can meet the more lenient gateway innocence test to overcome any procedural defaults and allow this Court to consider the claims raised in his first habeas petition. To bring a gateway claim of actual innocence, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence of innocence." *Clay v. Dormire*, 37 S.W.3d 214, 217 (Mo. banc

10

2000) (alteration omitted). Dorsey relies on *State ex rel. Verweire v. Moore*, 211 S.W.3d 89 (Mo. banc 2006), to claim a defendant does not have to be innocent of *all* crimes, just guilty of a lesser offense than the one for which he was convicted to have a claim of actual innocence.

In *Verweire*, the defendant pleaded guilty to a crime he did not commit. *Id*. at 90. There was no direct appeal or postconviction relief proceeding; instead, the defendant filed a petition for writ of habeas corpus. *See id.* at 91 ("Habeas corpus relief is available even in the absence of a direct appeal or a Rule 24.035 post-conviction relief motion where petitioner can demonstrate 'manifest injustice or miscarriage of justice' by showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"). The issue on appeal before this Court in *Verweire* was whether the petitioner's conduct as admitted during his guilty plea constituted an offense of first-degree assault. *Id.* at 92. The Court determined the admitted conduct was not factually sufficient to establish the petitioner acted in a manner constituting the offense of first-degree assault. *Id.* at 92-93. The Court held the petitioner was actually innocent of the offense, there was no factual basis for his guilty plea, and his guilty plea was not knowingly and voluntarily entered. *Id.* at 93. This Court concluded the petitioner demonstrated manifest injustice and established a gateway claim of innocence.

Dorsey's case is clearly distinguishable from *Verweire*. Not only did Dorsey file a direct appeal and seek postconviction relief where his claim could have been previously raised, but, more importantly, there is no manifest injustice because Dorsey undoubtedly established a factual basis for his plea of guilt. During his guilty plea hearing, Dorsey

11

admitted he knowingly killed both victims by shooting them and did so after deliberating on the matter. Dorsey does not claim, as in *Verweire*, that there was no factual basis for his guilty plea. Dorsey does not deny he knowingly shot and killed two people; rather, he argues only that evidence is now available to support his argument that he was incapable of deliberation. *Verweire* held it is manifest injustice to plead guilty to something that is not factually a crime; it did not authorize relitigating and contesting facts and conduct previously admitted to during a guilty plea. For these reasons, *Verweire* is distinguishable from Dorsey's case and does not support his request for writ relief.

Even if *Verweire* were applicable, Dorsey would still have to establish he was incapable of deliberating at the time of the offense despite his admissions during his guilty plea hearing, and he cannot "show that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence of innocence." *Clay*, 37 S.W.3d at 217. (alteration omitted). As noted above, the inconclusive affidavits from Dr. Fabian and Dr. French suggesting Dorsey may not have been capable of deliberation are unpersuasive, especially in light of the overwhelming evidence that the murders were premediated. Before committing the murders, Dorsey retrieved the unloaded single-shot shotgun from the shop, loaded the gun, shot S.B., emptied the chamber, reloaded the gun, shot B.B., poured bleach on S.B.'s body to cover up evidence of the rape, locked the bedroom door, stole their property to sell, turned himself in to the police, and identified himself as the one the police needed to talk to about the murders. Weighing this evidence, Dorsey cannot show it is more likely than not that no reasonable juror would have convicted him. Therefore, Dorsey cannot establish a gateway innocence claim.

## II. Ineffective Assistance of Counsel

"Rule 29.15 provides the exclusive procedure by which [a] person may seek relief in the sentencing court for [claims of ineffective assistance of counsel]." Rule 29.15(a). "[H]abeas review does not provide duplicative and unending challenges to the finality of a judgment, so it is not appropriate to review claims already raised on direct appeal or during post-conviction proceedings." *State ex rel. Strong v. Griffith*, 462 S.W.3d 732, 733-34 (Mo. banc 2015) (internal quotation omitted).

Dorsey argues he received ineffective assistance of counsel because his trial counsel had a conflict of interest arising out of the flat-fee arrangement. Dorsey alleges his trial counsel had a financial incentive to resolve his case expeditiously without a trial, creating a conflict of interest. Dorsey claims this conflict caused trial counsel to pressure him to plead guilty to a crime he could not have committed and to fail to mount any defense in the sentencing phase proceeding. Dorsey admits, however, he advanced this same argument before this Court in his Rule 29.15 appeal. *See Dorsey*, 448 S.W.3d at 300. This Court rejected the claim then, holding Dorsey did not demonstrate an actual conflict that adversely affected trial counsel's performance. *Id.* The Court found that funds independent of counsel's flat fee were available as needed and counsel's actions were based on reasonable trial strategy and not finances. *Id.* This Court rejected a similar flat-fee claim in the capital case *Tisius v. State*, 519 S.W.3d 413, 430 (Mo. banc 2017). Dorsey's claim for relief must be denied as duplicative. *Strong*, 462 S.W.3d at 733-34.

13

Dorsey argues he can overcome this procedural bar because he is actually innocent of capital murder. As discussed above, Dorsey does not have a valid gateway claim of actual innocence and, accordingly, cannot overcome this procedural bar by showing manifest injustice. Moreover, a valid gateway claim of actual innocence only permits the court to consider procedurally defaulted claims or claims a defendant failed to raise on direct appeal or in a timely postconviction relief motion. *Thornton v. Denney*, 467 S.W.3d 292, 295 (Mo. App. 2015). It does not authorize review of claims previously raised and rejected by the court. As noted above, Dorsey concedes he raised this same claim in his Rule 29.15 appeal and this Court rejected the claim. Therefore, this Court is not permitted to review this previously litigated issue anew even if Dorsey could establish a valid gateway claim of innocence.

Dorsey additionally argues he can raise this claim anew in his habeas petition because his state postconviction counsel was ineffective in advancing this argument in the Rule 29.15 appeal by failing to present evidence that Dorsey was experiencing drug-induced psychosis the night of the murders, rendering Dorsey incapable of deliberation. Dorsey contends it is an "open and unresolved question" as to whether this Court recognizes claims of ineffective assistance of postconviction counsel, which this Court should resolve by adopting *Martinez v. Ryan*, 566 U.S. 1 (2012). This question is not, however, open and unresolved because this Court has already held ineffective assistance claims against postconviction relief counsel are not recognized. *Barton v. State*, 486 S.W.3d 332, 336 (Mo. banc 2016). Dorsey is procedurally barred from raising these ineffective assistance of counsel claims now.

Next, Dorsey argues this Court's previous finding that no conflict of interest existed due to the flat-fee arrangement failed to follow United States Supreme Court guidance for determining whether counsel was conflicted and acted adversely to Dorsey's interests, citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and *United States v. Cronic*, 466 U.S. 648 (1984). Relying on *Cuyler* and *Cronic*, Dorsey contends this Court must presume a conflict of interest exists when there is a flat-fee arrangement and this Court's opinion addressing his postconviction relief motion failed to abide by the holdings in *Cuyler* and *Cronic*. Even if this contention had merit, it would not create an exception to overcoming the procedural bar. Moreover, the argument fails on its merits.

In *Cronic*, the United States Supreme Court determined a lower court erred by presuming ineffective assistance of counsel based on the circumstances surrounding the defendant's representation. *Id.* at 666. The Supreme Court held the defendant can "make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel" based on the specific claims of ineffective assistance of counsel made by the defendant in the case. *Id.* Dorsey assumes *Cronic* applies here and argues this Court erred in finding counsel was ***not*** ineffective and improperly presumed his counsel was ***not*** ineffective. But Dorsey misreads both *Cronic* and this Court's prior opinion. *Cronic* merely held the specific circumstances of that case as presented to the Supreme Court did not warrant a presumption of ineffective assistance of counsel. *Id.* at 666-67. *Cronic* does not preclude this Court from determining, given the circumstances of Dorsey's criminal case, that Dorsey failed to demonstrate a conflict of interest. Moreover, this Court did not presume Dorsey failed to demonstrate a conflict of interest simply because, as Dorsey

15

suggests, no Missouri court has found a flat-fee arrangement necessarily creates a conflict of interest. Rather, this Court reached its holding after careful evaluation, which the federal district court detailed in its opinion. *See Dorsey*, 2019 WL 4740518, at *3-4. Dorsey also faults this Court for not reviewing whether the flat-fee arrangement prejudiced his defense. But this Court specifically found trial counsel's actions were based on reasonable trial strategy and not financial limitations due to the flat-fee arrangement, and so Dorsey was not prejudiced. *Dorsey*, 448 S.W.3d at 300. The Supreme Court's holding in *Cronic*, therefore, does not support Dorsey's claim.

Dorsey argues this Court's prior opinion also failed to abide by *Cuyler* in analyzing Dorsey's conflict of interest claim when this Court held a flat-fee arrangement is not an "actual conflict." In *Cuyler*, Sullivan and two others were charged with the same murders. 446 U.S. at 337. Two attorneys represented all three defendants throughout the trial proceedings. *Id.* Sullivan, who was tried first, was found guilty and sentenced to life in prison, while his two co-defendants were acquitted following separate trials. *Id.* at 338. Sullivan filed a petition for writ of habeas corpus, claiming he had received ineffective assistance of counsel because his trial counsel's dual representation of the co-defendants constituted a conflict of interest. *Id.* at 338-39. The Supreme Court held: "to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. Once a defendant demonstrates this, he "need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively

16

represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 349-50 (internal citation omitted).

The holding in *Cuyler*, however, "has not been extended by the Supreme Court beyond cases in which an attorney has represented more than one defendant" in a criminal matter, which was not the source of the alleged conflict of interest in Dorsey's case. *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006); *see also Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002). *Cuyler*, therefore, does not support Dorsey's claim for relief. Dorsey also tries to argue this Court violated *Cuyler* because the Kansas Supreme Court has held flat-fee arrangements constitute an actual conflict of interest. This Court is not bound by another state court's precedent and has conformed with United States Supreme Court precedent regarding conflicts of interest.[10]

## III.    Eighth Amendment Claim

In a separate writ petition, Dorsey claims he belongs to a unique class of persons for whom the penological goals supporting capital punishment are no longer met. Accordingly, Dorsey argues the Eighth Amendment bars his execution and this Court should convert his death sentence to a sentence of life without the possibility of parole. Dorsey does not define the parameters of the unique class to which he contends to belong

---

[10] Dorsey additionally argues Missouri does not follow the American Bar Association ("ABA") guidelines for the appointment of counsel in capital cases or the Missouri State Public Defender's determination that flat-fee representation in capital cases violates the Missouri Rules of Professional Conduct. Even assuming Dorsey's argument is correct, this Court is not bound by ABA guidelines nor the determinations of the Missouri State Public Defender.

17

but supports his request for relief on his claims that he has undergone a remarkable redemption, has had an unblemished prison record for more than 17 years on death row, and has received unprecedented support from more than 70 correctional officers.[11]

Dorsey's claim is meritless. He relies on Justice White's concurring opinion in *Furman v. Georgia*, 408 U.S. 238, 312 (1972), to argue an execution can be barred when it "ceases realistically to further the[] purposes" of capital punishment, which include deterrence, retribution, and rehabilitation. Dorsey compares his case to *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Panetti v. Quarterman*, 551 U.S. 930 (2007), cases in which the United States Supreme Court held and reaffirmed the Eighth Amendment prohibits the execution of a prisoner who is "insane" or incompetent because of a mental condition at the time of execution. In both cases, the Supreme Court questioned the retributive value of executing a person who has no comprehension of why he is being executed due to incompetency. *Ford*, 477 U.S. at 409; *Panetti*, 551 U.S. at 958-59. The Supreme Court specifically noted the reasons at common law for not executing an

---

[11] Dorsey alleges a group of more than 70 corrections staff members at Potosi Correctional Center have signed a letter to the governor, and five correctional officers have authored individual letters urging the governor to commute Dorsey's sentence to life in prison. According to the State, however, neither the governor's office nor the Missouri Department of Corrections have received any of these letters. Dorsey included excerpts from the five individual letters in the body of his writ petition and explained he has kept the correctional officers anonymous to protect them from fear of retaliation. Dorsey alleges he has established a timetable with the governor's office for the submission of clemency materials and is proceeding on that timeline. The State also alleges Dorsey has withheld the unblemished prison records allegedly supporting his claim of rehabilitation. Indeed, Dorsey has merely provided to this Court a report from Potosi's retired warden, who states he reviewed Dorsey's prison file, and a report from a clinical psychologist who states he reviewed copies of the letters to the governor, but Dorsey has not included the relevant prison records or letters to the governor in support of his writ petition.

incompetent person included a lack of retributive and deterrence value. *Ford*, 477 U.S. at 406-07. Dorsey argues that, if the Supreme Court has held mental deterioration can make an execution an Eighth Amendment violation because it does not further penological goals, it "must also be true" that "growth, transformation, and redemption" can make an execution an Eighth Amendment violation. Not only is there no common law to support Dorsey's argument, but mental incompetence and personal growth are also clearly distinguishable characteristics. Moreover, Dorsey does not explain how his execution would not further the penological goals of deterrence or retribution. Dorsey's case, therefore, is clearly distinguishable from *Ford* and *Panetti*.

Dorsey next attempts to rely on cases in which the Supreme Court found the severity of the offense was disproportionate to the imposition of the death penalty or there was some characteristic of the offender at the time of the offense that made the death penalty a disproportionately harsh punishment. *See Kennedy v. Louisiana*, 554 U.S. 407, 446 (2008) (holding the Eighth Amendment prohibits the execution of a defendant guilty of child rape); *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding the Eighth Amendment prohibits the execution of a mentally disabled prisoner); *Enmund v. Florida*, 458 U.S. 782, 801 (1982) (holding the Eighth Amendment prohibits the death penalty for a defendant who did not kill, attempt to kill, or intend to kill); *Roper v. Simmons*, 543 U.S. 551, 570 (2005) (holding the Eighth Amendment prohibits the execution of defendants who were minors at the time of their crimes). But Dorsey's offenses – two counts of first-degree murder – are not disproportionate to capital punishment. He also did not possess a characteristic *at the time of the offense* that made the death penalty a disproportionately

19

harsh punishment. In fact, the jury found seven aggravating factors warranting imposition of the death penalty in Dorsey's case.

Dorsey's claim revolves around his behavior post-sentencing. Accordingly, Dorsey seeks to extend *Skipper v. South Carolina*, 476 U.S. 1 (1986), to his post-sentencing rehabilitation. In *Skipper*, the defendant was convicted of capital murder and rape after a jury trial in South Carolina state court. *Id.* at 2. At the sentencing hearing, the defendant sought to introduce testimony that he had adjusted well to pretrial incarceration in the months between his arrest and trial. *Id.* at 2-3. The trial court excluded this evidence, and the defendant was sentenced to death. *Id.* at 3. The United States Supreme Court reversed the South Carolina Supreme Court's decision affirming the death sentence, finding the defendant's pretrial jail behavior was relevant mitigating evidence the jury should have been able to consider at the sentencing hearing. *Id.* at 8-9. The holding in *Skipper*, therefore, concerned only whether evidence of good pretrial behavior is admissible in the capital sentencing proceedings. *Skipper* does not support Dorsey's claim that behavior in prison post-trial should be a basis for setting aside a death sentence after an execution warrant has been issued.

Ultimately, Dorsey's claim that his death sentence should be converted to a sentence of life without parole due to his model behavior as an inmate in prison is a plea for clemency. The Missouri Constitution grants the governor complete discretion to grant pardons, commutations, and other forms of clemency. Mo. Const. art. IV, sec. 7. The Missouri legislature also acknowledges the governor's power and discretion to grant clemency. *See* secs. 217.800; 552.070. Accordingly, Dorsey's claim seeking relief from

20

his death sentence based on post-trial prison behavior should be directed to the governor rather than this Court.[12] Because Dorsey's claim is a plea for clemency, it is beyond this Court's authority and review. *See Cooper v. Holden*, 189 S.W.3d 614, 620 (Mo. App. 2006) (holding the court does not have jurisdiction over a prisoner's claim for a reprieve, commutation, or pardon). Therefore, Dorsey fails to present any legally cognizable claim for habeas relief.

**Conclusion**

Dorsey has not demonstrated he is actually innocent or that his execution would violate the Eighth Amendment. Additionally, this Court previously found Dorsey's claim of ineffective assistance of counsel due to a financial conflict of interest lacks merit, and

---

[12] Missouri is not unique in granting the executive branch absolute discretion over clemency relief. "While traditionally available to capital defendants as a final and alternative avenue of relief, clemency has not traditionally been the business of courts." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 284 (1998) (internal quotation omitted). For offenses under federal law, only the president has the power to grant clemency. U.S. Const. art. II, sec. 2, cl. 1. And of the states that still have the death penalty, clemency power is either vested in the executive branch or an advisory board that determines clemency or recommends to the governor whether to grant clemency. *See, e.g.*, *Trueblood v. State*, 790 N.E.2d 97, 97-98 (Ind. 2003) ("The exclusive power to grant clemency rests with the Governor. . . . There is no provision in the state constitution or statutes for judicial review of the Governor's decision concerning a clemency petition."); *Carroll v. State*, 114 So. 3d 883, 888 (Fla. 2013) ("[I]t is not this Court's prerogative to second-guess the executive branch on matters of clemency in capital cases."); *Bacon v. Lee*, 549 S.E.2d 840, 854 (N.C. 2001) ("[S]imilar to the due deference the federal judiciary naturally exhibits toward the President's exercise of clemency authority by virtue of the separation of powers doctrine, we likewise believe that this Court should exhibit a similar, or perhaps even greater, deference toward a Governor's exercise of clemency authority . . . .").

21

Dorsey is procedurally barred from raising this same claim again. Accordingly, Dorsey's petitions for writ of habeas corpus are denied.[13]

_____
W. Brent Powell, Judge

All concur.

---

[13] No Rule 84.17 motions shall be filed in these matters.